Argued and submitted April 14, affirmed December 24, 2003

In the Matter of the Marriage of

Cynthia Jean AUSTIN,
*Respondent,*

*and*

Stephen Douglas AUSTIN,
*Appellant.*

00C-32246; A115886

82 P3d 170

J. Michael Alexander argued the cause for appellant. With him on the briefs was Swanson, Lathen, Alexander & McCann, PC.

Russell Lipetzky argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

Haselton, P. J., concurring in part and dissenting in part.

**DEITS, C. J.**

Husband appeals from a judgment of dissolution of marriage, arguing that the trial court erred in its determination that wife was entitled to $750 per month of maintenance spousal support and $250 per month of compensatory spousal support for an indefinite period of time. Wife cross-assigns error, arguing that, even if the court erred in classifying some of the support as compensatory rather than maintenance support, the total support amount of $1,000 per month was appropriate. We review *de novo*, ORS 19.415(3), and affirm.

The parties were married in 1969, when husband was 20 and wife was 16. Early in the marriage, husband earned an associate's degree in photography, and wife took evening classes to finish high school. Using his associate's degree, husband worked for two years as a photographer. In the early 1970s, husband went to work as a deputy for the Los Angeles County Sheriff's Department. While working full time, husband began course work toward obtaining a bachelor's degree. Husband had the opportunity to be promoted to detective or sergeant, or to take a job doing technical writing for the sheriff's department, but he declined to pursue those options. Wife was a homemaker, caring for the parties' two children. Husband experienced considerable stress in his job. Consequently, in about 1980, the family moved to northern California, where husband had accepted a lower-paying, but less stressful, position as a sheriff's deputy. Wife continued to care for the children and also earned a small income doing housecleaning. In Los Angeles, the family had lived in a custom-built home in a resort area. In northern California, they moved into an 800-square-foot log cabin heated with a wood stove. Wife raised animals, grew a garden, canned vegetables, and split wood for heating. At some point, husband took a yet lower-paying job as a welfare fraud investigator.

In 1984, husband decided to pursue a bachelor's degree in religious studies. Husband cashed out his retirement account, totaling approximately $28,000, and the family moved to Oregon, where they lived on the proceeds of the

retirement account while husband worked toward his degree for about two years, attending Canyonview Bible College, Western Baptist College, and Western Oregon State College. At some point, husband changed his educational plans and pursued a degree in criminal justice. During the two years that husband attended college, wife took care of the children and the household, including keeping the children quiet and out of husband's way while he was studying. Wife also assisted husband with his school work, including typing papers for him. Wife supported husband's decisions to pursue further education, even though it resulted in husband being unavailable for family responsibilities, because she was led to believe that it would ultimately advance the family's finances. She testified:

> "If it wasn't to better himself in his job and his work, then the time and the money that he took away from the family and the stress that it put on the family were purely for selfish reasons. And so I assumed, especially when like he said the A.A. degree benefitted him with his job with the micro—oh, heavens—anyway, the film place that he worked for. And the fact that he got his B.S. degree in criminal justice administration, I assumed that it would go to better himself with work."

In 1986, husband obtained a degree in criminal justice and returned to the workforce. He took a job as a deputy with the Clackamas County Sheriff's Department and has remained in that position since that time.

Wife attempted several times to pursue further education that would provide her with marketable skills. In California, wife enrolled in an early childhood education program. However, because husband did not take on additional responsibility for the children or housework or assist wife in her studying, wife gave up her studies. This pattern repeated when wife enrolled in a psychology class at Long Beach Community College and in a medical assistant program. In Oregon, wife also looked into cosmetology school and a nursing program at Chemeketa Community College. Wife did not enroll in either of those programs because she "saw the writing on the wall" and because "[w]e would have put money into it that I couldn't have gotten out if it didn't work." Wife entered the workforce in 1988 as a part-time school bus

driver. At husband's request, wife restricted her hours to part time and only accepted a particular schedule because husband wanted her at home during the middle of the day. Wife did not work in the summer because husband preferred her not to. By the 1990s, wife was working full time as a school bus driver.

Throughout the marriage, husband decided where they would live, the nature and hours of their work, and what educational and professional opportunities he would pursue. Wife had primary, if not exclusive, responsibility for housework and yard work, child rearing and transportation, shopping, and paying bills. Wife handled the parties' finances, and the parties lived frugally, generally keeping credit card balances low, living in a modest home, and driving older cars.

At the time of the dissolution proceeding in 2001, husband had advanced as far as he could within his job classification with the Clackamas County Sheriff's Department. Husband declined to seek a promotion to sergeant. In the years before the dissolution proceeding, husband was paid approximately $23 per hour, earning slightly more than $50,000 a year. Because of his degree in criminal justice, husband earns slightly more than he would otherwise. At the time of the dissolution proceeding, wife was working as a school bus driver full time during the school year and part time during the summer, at a rate of about $13 per hour, earning close to $20,000 per year. Wife expected to receive a small inheritance from the estate of her mother who had died shortly before the parties separated.

The trial court divided the marital assets—which were almost exclusively in the form of retirement accounts and home equity—nearly equally, so that each party received property valued at roughly $230,000. The trial court concluded that wife's potential share of her mother's estate was not a marital asset or alternatively, if it were, that wife had overcome the presumption of equal contribution.[1] The trial court awarded wife indefinite spousal support of $1,000 per

---

[1] Husband does not assign error on appeal to the trial court's treatment of wife's expected inheritance, although some of his arguments concerning support refer to the expected inheritance. The value of the inheritance was not definitively established at trial, but estimates of $65,000 and $79,000 were given.

month, $750 of which was deemed maintenance support and $250 of which was deemed compensatory support.

On appeal, husband argues that the trial court erred both in awarding $750 per month in indefinite maintenance spousal support and in awarding any compensatory spousal support to wife. Husband contends that the judgment should be modified to award only maintenance spousal support of $500 per month for five years.

We affirm the trial court's award of maintenance spousal support without discussion. We write only to discuss the parties' arguments concerning the award of compensatory spousal support. That award is based on ORS 107.105(1)(d), which states, in part, that the court may provide:

> "For spousal support, an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both. The court may approve an agreement for the entry of an order for the support of a party. In making the spousal support order, the court shall designate one or more categories of spousal support and shall make findings of the relevant factors in the decision. The court may order:

> "* * * * *

> "(B) Compensatory spousal support when there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances. The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:

> "(i) The amount, duration and nature of the contribution;

> "(ii) The duration of the marriage;

> "(iii) The relative earning capacity of the parties;

> "(iv) The extent to which the marital estate has already benefitted from the contribution;

> "(v) The tax consequences to each party; and

"(vi)   Any other factors the court deems just and equitable."

The compensatory spousal support award provisions of subsection (B) were added to ORS 107.105(1) in 1999. Or Laws 1999, ch 587, § 1.

Husband asserts that the legislative intent behind ORS 107.105(1)(d)(B) is to address situations in which a spouse contributed to the enhancement of the other spouse's earning capacity but, because the marriage was short term, the contributing spouse did not receive the ongoing benefits of the other spouse's enhanced earning capacity. He argues, " '[C]ompensatory spousal support' should be limited to those rare circumstances where one spouse significantly contributes to the enhancement of another spouse's earning capacity, through economic or noneconomic means, and is then divorced at a point in time prior to the realization of the expected benefits of the enhanced earnings." He points out that wife's contribution to his earning of a bachelor's degree occurred some 15 years before the dissolution of the marriage—and that, to the extent that the bachelor's degree provided a slight enhancement to his earning capacity, the marital estate has already benefitted from it.

Wife views the statute more broadly and argues that the determination of entitlement is not limited merely to consideration of any contributions to husband's education and the economic consequences of that education. Rather, wife asserts that compensatory spousal support is appropriate because she "devoted thirty years of her life to husband's education, training, skills, career and earning capacity." She points out that husband made all meaningful decisions throughout the marriage as to what jobs and education the parties would have and that, as a result of husband's decisions, she obtained virtually no education and, thus, has few job skills.

■    We begin with the text of ORS 107.105(1), read in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Context includes previous versions of the statute, as well as judicial interpretations of previous versions of the statute. If the legislature's intent is clear from the text and context, further analysis is unnecessary. *Id.*

ORS 107.105(1)(d)(B) first describes the threshold requirement for the court to *consider* making an award of compensatory spousal support. To meet that threshold, a spouse must show that he or she made a "significant financial or other contribution * * * to the education, training, vocational skills, career *or* earning capacity of the other party." (Emphasis added.) Once that threshold is met, an award of compensatory spousal support may be made only if it is "otherwise just and equitable in all of the circumstances." ORS 107.105(1)(d)(B). The statute specifically identifies a number of nonexclusive factors that the court should consider in deciding if compensatory spousal support is just and equitable in all of the circumstances. Those factors are (1) the amount, duration, and nature of the contribution; (2) the duration of the marriage; (3) the relative earning capacity of the parties; (4) the extent to which the marital estate has already benefitted from the contribution; (5) the tax consequences to each party; and (6) any other factors that the court may deem just and equitable.

■ ■ Contrary to husband's view, the text of ORS 107.105(1)(d)(B) does not limit an award of compensatory spousal support to situations involving "enhanced earning capacity." As noted, "enhanced earning capacity" is but one of a list of several areas to which a spouse may contribute in order to meet the threshold requirement for compensatory spousal support. Other areas to which a spouse may make a "significant financial or other contribution" are the education, training, vocational skills, and career of the other party. Nothing in ORS 107.105(1)(d)(B) requires that the contribution to the other spouse's education, training, vocational skills, or career must have resulted, actually or potentially, in an economic benefit in order for the court to consider whether an award of compensatory spousal support is just and equitable under the statutory factors. Rather, the text of the statute provides that, if it is shown that a spouse has made a *significant* financial or other contribution to the other spouse's education, training, vocational skills, career, *or* earning capacity, the court may consider whether an award of compensatory spousal support is appropriate under the circumstances.

Husband nonetheless contends, and the dissent agrees, that, in light of a prior version of the statute and the cases construing it, we should import an "economic benefit" requirement into ORS 107.105(1)(d)(B). Before 1999, ORS 107.105 provided that one spouse could receive a property award for contributing to the enhanced earning capacity of the other spouse. Husband's position is that the legislature intended that the requirements for property awards under the former "enhanced earning capacity" statute should be applied to requests for "compensatory spousal support" under the current statute. The only change effectuated by this amendment to the law, in husband's view, is the form of the award.

■      However, as explained above, the language of the current statute is not ambiguous. Consequently, it is not appropriate to consider the legislative history. *PGE*, 317 Or at 610-12. Further, as we explain below, even if we assume that the legislative history includes some indication that that was, in fact, the legislature's intent, that intent was not carried out by the terms of the statute that the legislature enacted. *See Young v. State of Oregon*, 161 Or App 32, 38-40, 983 P2d 1044, *rev den*, 329 Or 447 (1999); *Deluxe Cabinet Works v. Messmer*, 140 Or App 548, 555, 915 P2d 1053, *rev den*, 324 Or 305 (1996).

For the last 20 years, a contribution made by one spouse to the education, training, and earning capacity of the other spouse has been an enumerated factor that courts may consider in awarding "just and equitable" spousal support. Or Laws 1983, ch 728, § 2. In 1993, the spousal support provision of ORS 107.105(1) provided, in part:

"(d)   * * * In making such [spousal] support order, the court shall consider the following:

"* * * * *

"(C)   The contribution by one spouse to the education, training and earning power of the other spouse;

"* * * * *

"(F)   * * * [W]here the other party has, during the marriage, achieved a substantially advantageous economic

position through the joint efforts of the parties, the court may award the disadvantaged party support as compensation therefor, so that the standard of living for the disadvantaged party will not be overly disproportionate to that enjoyed during the marriage[.]"

The 1993 Legislative Assembly retained the above-quoted wording in the spousal support provision of ORS 107.105(1), but it added the following wording to the property division provision of ORS 107.105(1):

"(f) * * * The present value of, and income resulting from, the future enhanced earning capacity of either party shall be considered as property. The presumption of equal contribution to the acquisition of marital property, however, shall not apply to enhanced earning capacity. A spouse asserting an interest in the income resulting from an enhancement of earning capacity of the other spouse must demonstrate that the spouse made a material contribution to the enhancement. Material contribution can be shown by, among other things, having contributed, financially or otherwise, to the education and training that resulted in the enhanced earning capacity. The contribution shall have been substantial and of prolonged duration."

Or Laws 1993, ch 315, § 1. That portion of ORS 107.105(1)(f) was popularly referred to as the "enhanced earning capacity statute." *E.g., Denton and Denton*, 326 Or 236, 246, 951 P2d 693 (1998); *Tiley and Tiley*, 147 Or App 262, 266, 936 P2d 367, *rev den*, 325 Or 491 (1997). Accordingly, under the version of ORS 107.105 in effect after the 1993 legislative session, a spousal support award could factor in one spouse's contribution to another spouse's education, training, or earning power, and a property award could include the division of the present value and income resulting from a spouse's enhanced earning capacity. The availability of both those types of awards indicates that the legislature did not consider them to be mutually exclusive.

In 1999, the legislature amended ORS 107.105 to its present form.[2] The legislature repealed the enhanced earning capacity statute. It also repealed the previous version of ORS

---

[2] The minor changes made to ORS 107.105 in 2001 and 2003, even assuming they would retroactively apply to this appeal, would have no effect on the issues in this case. *See* Or Laws 2003, ch 576, § 109; Or Laws 2001, ch 873, § 5.

107.105(1)(d) in its entirety. Or Laws 1999, ch 587, § 1. In its place, it enacted a new spousal support provision. *Id.* The new provision includes the same overarching criterion of the previous provision: the amount awarded as spousal support is to be "just and equitable." ORS 107.105(1)(d). Under the new provision, courts are to designate one or more "categories" of spousal support and are to make findings regarding the relevant factors. *Id.* Those categories of support are "transitional," "compensatory," and "maintenance." ORS 107.105(1)(d)(A), (B), (C). Each subparagraph pertains to a different type of spousal support and sets out a nonexclusive list of factors that a court is to consider in awarding that type of support. The final factor in each of the three lists is "[a]ny other factors the court deems just and equitable." ORS 107.105(1)(d)(A)(vii), (B)(vi), (C)(xi). Nonetheless, that each of the three lists expressly includes particular factors indicates that the legislature considered those factors to be particularly relevant in awarding that type of spousal support.

Again, ORS 107.105(1)(d)(B) allows a court to order

"[c]ompensatory spousal support when there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances. The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:

"(i)   The amount, duration and nature of the contribution;

"(ii)   The duration of the marriage;

"(iii)   The relative earning capacity of the parties;

"(iv)   The extent to which the marital estate has already benefitted from the contribution;

"(v)   The tax consequences to each party;

"(vi)   Any other factors the court deems just and equitable."

As noted, consideration of one spouse's contribution to the education, training, or earning power/capacity of the

other spouse is not a new concept in the spousal support provision. What the legislature appears to have done in 1999 is to have taken some of the elements from the repealed enhanced earning capacity statute and the former spousal support provision addressing compensatory-type awards and incorporated those elements into the new compensatory spousal support provision. Notably, one of the former provisions that the legislature did not incorporate into the new provision was the exclusive focus of ORS 107.105(1)(f) (1997) on "education and training *that resulted in * * * enhanced earning capacity*." (Emphasis added.) Instead, the legislature incorporated three types of benefits that might have been received by one spouse in part through the efforts of the other—education, training, and earning power/capacity—and added two more—vocational skills and career. The focus of ORS 107.105(1)(d)(B) is more broadly directed toward assessing whether one spouse is entitled to compensation for certain contributions made to the other, a focus that is indicated by the legislature's choice of name for this type of spousal support: compensatory. *See Black's Law Dictionary* 277 (7th ed 1999) (defining "compensate" as "[t]o pay (another) for services rendered" or "[t]o make an amendatory payment to; to recompense (for an injury)").

In light of that review of the current statute, we reject husband's suggestion that we should import an economic benefit requirement into ORS 107.105(1)(d)(B). Under the current statute, the extent to which the marital estate has benefitted from one spouses's contribution is only one of a number of factors to consider in determining if an award of compensatory spousal support is appropriate. ORS 107.105(1)(d)(B).

The dissent attempts to overcome the express language of the compensatory spousal support provision by concluding that the legislature did not really mean what it said. The dissent purports to rely on the context of the statute to support its understanding of the statute. However, the factors that the dissent points to as context, in reality, are not context but, rather, the dissent reading language into the statute based on its view of what the legislature intended in amending the statute.

The dissent first concludes that, when the legislature, in ORS 107.105(1)(d)(B), provided that the financial or other contribution may be to the other party's "education, training, vocational skills, career *or* earning capacity" (emphasis added), it did not really mean "or." The dissent reaches that conclusion by reasoning that, because training, vocational skills, career, and earning capacity "pertain to means that yield the end of greater earning potential, or that end itself," we should read into the statute the requirement that the contribution must result in an increase in earning capacity in order to be considered a contribution. 191 Or App at 326-27. Aside from the fact that that is not what the statute says, the dissent's initial premise is wrong. A contribution by one party to the other's training, vocational skills, or career does not necessarily lead to greater earning potential. For example, one spouse may make great sacrifices to allow the other to become an accomplished, but starving, artist. The dissent uses the same sort of reasoning to reach the conclusion that the term "education" as used in the statute must necessarily include only education that results in an increase in earning capacity. Had the legislature intended to limit the contributions that allow the court to consider whether compensatory spousal support is appropriate, it would have been easy to use language, including such a limitation, as it did in the former enhanced earning capacity statute. Moreover, the dissent's proposed construction would have the effect of reading words out of the statute. If only contributions to earning capacity can support compensatory spousal awards, then the words "education, training, vocational skills, [and] career" are mere surplusage. We may not construe a statute to omit what the legislature has included. ORS 174.010.

Finally, the dissent uses hypotheticals to attempt to demonstrate that ORS 107.105(1)(d)(B) "does not countenance" our understanding of the words of the statute. 191 Or App at 329. The dissent uses the examples of a wife who has contributed to a husband's fly-tying classes and a husband who has contributed to a wife's literature courses and asks whether it makes sense that the contributing spouses should be entitled to compensatory spousal support. The first problem with the hypotheticals is that, in the absence of additional facts, those contributions would not be considered "significant," as the statute requires. Even assuming that such

circumstances could somehow get by the threshold requirement that the contributions be significant, after considering the factors set out in the statute that the court is to consider in deciding if compensatory spousal support is just and equitable under the circumstances, the scenarios cited by the dissent are highly unlikely to result in an award of compensatory spousal support.

Husband relies on this court's decision in *Denton and Denton*, 145 Or App 381, 930 P2d 239 (1996), to support the proposition that the current statute is designed to compensate a spouse only for actual contributions to the earning capacity of the other spouse. That reliance is misplaced. Both our decision in *Denton*, and the Supreme Court decision that reversed that decision, *Denton and Denton*, 326 Or 236, 951 P2d 693 (1998), addressed the prior version of the statute, which, as discussed above, specifically required that the spouse's contribution must be to "the future enhanced earning capacity" of the other party and addressed circumstances where the spouse is "asserting an interest in the income resulting from an enhancement of earning capacity of the other spouse." ORS 107.105(1)(f) (1997). As we have concluded, in contrast to the version of the statute involved in *Denton*, the text of the present statute authorizes the court to consider an award of compensatory spousal support when there have been contributions by one party to the "education, training, vocational skills, career *or* earning capacity of the other party." ORS 107.105(1)(d)(B) (emphasis added).

Husband also relies on the provisions of ORS 107.135, which make modifications of compensatory spousal support more difficult, to support his view that the justifications for awarding compensatory spousal support should be the same as those necessary for a property award for enhanced earning capacity under the previous version of the statute. However, the fact that a higher standard applies to modifications of compensatory spousal support does not alter the language of ORS 107.105(1)(d)(B) specifically articulating the criteria for entitlement to an award of compensatory spousal support. As discussed above, put simply, the text of ORS 107.105(1)(d)(B) does not require that one spouse's contribution to the other spouse's education, training, vocational skills, career, *or* earning capacity have resulted in an actual

increase in income, as did the former enhanced earning capacity statute, in order for a court to consider whether a compensatory spousal support award is just and equitable under the circumstances.

■    In applying the current version of ORS 107.105(1)(d)(B) to these circumstances, we first conclude that, as husband acknowledges, wife made significant financial and other contributions to his education, training, and career. Accordingly, wife has met the threshold requirement for the court to consider an award of compensatory spousal support. As explained above, that conclusion alone does not entitle wife to compensatory spousal support. The remaining question is whether such an award is "just and equitable in all of the circumstances." ORS 107.105(1)(d)(B).

In determining whether compensatory spousal support is just and equitable in all of the circumstances of this case, we consider the nonexclusive list of factors that courts are to consider in deciding if such an award is just and equitable. ORS 107.105(1)(d)(B). That determination will necessarily be fact specific. Here, during their 30-year marriage, wife supported husband's numerous educational and training efforts and career changes and moves by assuming the major responsibility for the parties' home and children, working outside the home, and assisting husband with his studies. She agreed to husband's liquidation of $28,000 in assets to allow him to pursue his education. Wife supported husband's education and career with the understanding that the parties' joint efforts would ultimately pay off in improved financial circumstances. Wife did not receive reciprocal support from husband when she attempted to pursue her own educational and training opportunities, and she tailored the only employment she has had since 1988 to husband's needs and preferences. As wife testified, when husband's attorney asked why she should be "paid back" with compensatory spousal support:

"Q    Well, my question, Ms. Austin, is do you need to be paid back with spousal support? Is there something that you need to be paid back for?

"A    I've given him 31 years that I devoted to him and our family. I did everything, freed him up to work the shifts

he desired, to go to the jobs he wanted, to take the schooling he wanted, to take away from our family. I supported him in everything we did, leaving myself without the wherewithal to support myself in the same manner that he has."

Considering the extent of wife's contribution, ORS 107.105(1)(d)(B)(i); the duration of the marriage, ORS 107.105(1)(d)(B)(ii); and the relative earning capacities of the parties, ORS 107.105(1)(d)(B)(iii), the trial court's award of $250 per month of compensatory spousal spousal was just and equitable under the circumstances. ORS 107.105(1)(d)(B).[3]

Affirmed.

**HASELTON, P. J.,** concurring in part and dissenting in part.

The majority concludes that the 1999 amendments to ORS 107.105(1)(d) created an entitlement to compensatory support without reference to enhancement of earning potential. That conclusion rests on a single word "or"—in ORS 107.105(1)(d)(B). However, when construed in context, that statute is, at least, ambiguous—and the legislative history of the 1999 amendments conclusively demonstrates that enhanced earning capacity is the *sine qua non* of compensatory support. Here, wife's erstwhile contributions to husband's education have not enhanced, and will never enhance, husband's earning capacity. Consequently, while I concur in the affirmance of the award of maintenance support, I respectfully dissent from the affirmance of compensatory support.[1]

---

[3] Although, in view of our holding, it is not necessary to address wife's cross-assignment of error regarding the classification of spousal support, we note that the assignment of error would require the modification of the "judgment on appeal," ORAP 5.57(2)(a), and, accordingly, required a cross-appeal.

[1] I also concur in the majority's conclusion that wife's "cross-assignment" of error is procedurally improper. *See* 191 Or App at 322 n 3. The relief that wife seeks can be obtained only by way of a cross-appeal and not a cross-assignment of error. ORAP 5.57(2); *see Samuel v. King*, 186 Or App 684, 690, 64 P3d 1206, *rev den*, 335 Or 443 (2003) (cross-appeal is necessary where the party's argument, if successful, "would yield relief different from that afforded under the trial court's judgment").

Here, wife's "cross-assignment" asserts that, even if the trial court's award of compensatory spousal support was "improperly characterized," the entire amount of spousal support—$1,000 a month—should be affirmed as maintenance spousal support under ORS 107.105(1)(d)(C). That is, wife contends that, if husband is

Wife's alleged entitlement to compensatory support depends on the extent to which the 1999 amendments altered the well-established preexisting bases for awards of spousal support. Under the previous version of ORS 107.105, the trial court was authorized to award spousal support generically, without any differentiation among various "species" of such support. ORS 107.105(1)(d) (1997). In determining entitlement and amount of spousal support, the court was to consider a range of factors, including:

"(C)  The contribution by one spouse to the education, training *and* earning power of the other spouse;

"(D)  The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E)  The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F)  The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the extent to which suitable job opportunities are unavailable to a party considering the age of the party

correct that compensatory spousal support was not warranted, the *amount* of support stated in the judgment should not be modified, but the *denomination* of the support should be modified from "compensatory" to "maintenance." Such a change, however, would require a modification of the "judgment on appeal," ORAP 5.57(2)(a), and not a modification of "an intermediate ruling of the trial court." ORAP 5.57(2)(b). Such a modification would require a cross-appeal—or, more likely, a contingent cross-appeal to be decided only in the event of the appellant prevailing on appeal. *See Jones and Jones*, 158 Or App 41, 51 n 4, 973 P2d 361, *adh'd to on recons*, 159 Or App 377, *rev den*, 328 Or 666 (1999) (respondent's argument that spousal support should be awarded if the court agreed with appellant that property distribution should be altered was not the proper subject of a cross-assignment of error); 2 *Family Law* § 19.31 (OSB CLE 2002) ("respondent must cross-appeal if he or she seeks any affirmative relief, even relief contingent on the appellant's winning his or her argument").

This is not simply a matter of glorifying form over substance: The type of modification wife is suggesting is not simply a matter of form; it would change the legal effect of the award. *See, e.g.*, ORS 107.135(2)(a) (specifying different conditions under which modifications of compensatory and maintenance support may be modified). Because wife did not file a cross-appeal, we lack jurisdiction to consider that matter.

and the length of time reasonably anticipated for a party to obtain training or updating of career or job skills."

*Id.* (emphasis added).

At the same time, the property division provisions of the former version of the statute treated as "property" "[t]he present value of, and income resulting from, the future enhanced earning capacity of either party." ORS 107.105(1)(f) (1997). In particular, under ORS 107.105(1)(f) (1997):

"A spouse asserting an interest in the income resulting from an enhancement of earning capacity of the other spouse must demonstrate that the spouse made a material contribution to the enhancement. Material contribution can be shown by, among other things, having contributed, financially or otherwise, to the education and training *that resulted in the enhanced earning capacity*. The contribution shall have been substantial and of prolonged duration."

(Emphasis added.)

In 1999, the legislature amended ORS 107.105(1)(d) to authorize awards of three distinct species of spousal support—"transitional," "compensatory," and "maintenance" support. ORS 107.105(1)(d)(A), (B), (C).[2] In particular, with respect to "compensatory support," the court may order payment of such support

"when there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances. The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:

"(i)     The amount, duration and nature of the contribution;

"(ii)    The duration of the marriage;

"(iii)   The relative earning capacity of the parties;

---

[2] *Or Laws* 1999, ch 587, § 1.

"(iv)   The extent to which the marital estate has already benefited [*sic*] from the contribution;

"(v)   The tax consequences to each party; and

"(vi)   Any other factors the court deems just and equitable."

ORS 107.105(1)(d)(B).[3]

Thus, the 1999 amendments effected two substantial changes. First, they removed "future enhanced earning capacity" from the realm of property division by deleting that matter from ORS 107.105(1)(f). Second, in place of the prior generic award of spousal support, the 1999 amendments created three distinct species of support that are, in turn, predicated upon particular considerations. Thus, for example, the support that a spouse may need to prepare for entry into the job market, a consideration previously acknowledged in ORS 107.105(1)(d)(E) (1997), is now designated "transitional support." ORS 107.105(1)(d)(A); *see also* ORS 107.105(1)(d)(C) ("maintenance support" is to be determined by reference to, *inter alia*, "the standard of living established during the marriage" and "[t]he relative income and earning capacity of the parties").

Wife argues, and the majority agrees, that the 1999 amendments effectuated a third substantive change from prior law—*viz.*, that a spouse can recover support for having contributed to the other spouse's education, even if that education has not had, and will never have, any positive impact on earning capacity. That proposition rests solely on the use

---

[3] At the same time, *see* Or Laws 1999, ch 587, § 2, the legislature amended ORS 107.135, concerning modification of spousal support awards, to add the emphasized language:

"(2)   In a proceeding under this section to reconsider the spousal * * * support provisions of the decree, the following provisions apply:

"(a)   A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support, *except that an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse.*"

(Emphasis added.)

of "or" in ORS 107.105(1)(d)(B): The court may award compensatory support if "there has been a significant financial or other contribution by one party to the education, training, vocational skills, career **or** earning capacity of the other party." (Boldface added.) *Compare* ORS 107.105(1)(d)(C) (1997) (in awarding support, court was to consider one spouse's contribution to "the education, training *and* earning power of the other spouse") (emphasis added). Given the use of "or," the majority reasons, "education" and "earning capacity" must be distinctive and disjunctive—and, thus, compensatory support can be based on contributions to education without reference to enhancement of earning potential.

The majority's disjunctive construction of the statute is certainly plausible. Nevertheless, at the first level of the *PGE* analysis, we are to view the text in context, *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993)—and here, the statutory context subverts the majority's reading. Two contextual features are most striking. First, of the five objects of compensable contribution "education, training, vocational skills, career or earning capacity"—the former four explicitly pertain to means that yield the end of greater earning potential, or that end itself.

Second, when construing the text of a statute in context, we apply maxims of statutory construction that bear directly on the reading of the text. *PGE,* 317 Or at 611 (first level of statutory construction includes "rules of construction that bear directly on the interpretation of the statutory provision in context"). One such maxim is *noscitur a sociis*: "Under that maxim general words, found in a statute, may take the color and meaning of associated words of specific connotation." *White v. State Ind. Acc. Com,* 227 Or 306, 317, 362 P2d 302 (1961); *see also Johnson v. Employment Dept.,* 187 Or App 441, 450 n 4, 67 P3d 984, *rev den,* 336 Or 60 (2003) (under principle of *noscitur a sociis,* the court assumes "that words in a series share the same quality"). Employing that maxim, the term "education," when used in association with the words "training, vocational skills, career or earning capacity" in a statute that concerns spouses' relative earning capacities, plausibly connotes the type of education that could lead to greater earning potential.

Thus, in context, the use of "or" is hardly conclusive. At *PGE*'s first level, ORS 107.105(1)(d)(B) is, at least, ambiguous.

That ambiguity is resolved by reference to the legislative history of the 1999 amendments to ORS 107.105. Those amendments were introduced as HB 2555. At the first public hearing on the bill in the House Judiciary Committee, one of the bill's drafters provided testimony and an exhibit indicating that the "compensatory support" category was created in order to characterize awards based on enhanced earning capacity as "a form of spousal support rather than as a form of property." Testimony, House Judiciary Committee/ Civil, HB 2555, Feb 25, 1999, Ex C (statement of Russell Lipetzky). Another of the bill's drafters testified that the compensatory support aspects of the bill were not intended to create "any new ground," other than to treat the matter as a support rather than a property division issue. Tape Recording, House Judiciary Committee/Civil, HB 2555, Feb 25, 1999, Tape 48, Side A (statement of Ron Gevurtz).

Similarly, the Staff Measure Summary in the House (and, again, in the Senate) stated:

> "A 'material contribution' [by one party to the education, training, vocational skills, career or earning capacity of the other] can be a contribution to the education or training of the spouse who, *as a result, enjoys a greater earning potential*. The classic example is the wife who supports the husband in medical school by working and keeping the house. If upon completion of his medical training, the husband divorces the wife, she may make a claim that she materially contributed to his anticipated future higher earnings as a physician. This bill will eliminate enhanced earning capacity as a species of property. The bill, however, *retains* the concept of enhanced earning capacity within spousal support."

Staff Measure Summary, House Judiciary Committee/Civil, HB 2555, Mar 31, 1999; Staff Measure Summary, Senate Judiciary Committee, HB 2555, May 19, 1999 (emphasis added); *see also* Tape Recording, Senate Judiciary Committee, HB 2555, May 17, 1999, Tape 184, Side A (statement of

Sen Kate Brown) (describing compensatory support as "really the enhanced earning capacity where someone has put someone through a neurology program and made them extremely lucrative in terms of earning capacity and then they split up").

The legislative history of the 1999 amendments thus unequivocally establishes two fundamental—and, in this case, controlling—propositions. First, the provisions of ORS 107.105(1)(d)(B) pertaining to "compensatory spousal support" relate solely to enhanced earning capacity. Consequently, contributions by one spouse to the education of the other that do not, and will not reasonably, enhance earning potential cannot be the basis of an award of compensatory spousal support.

Second, the 1999 amendments to ORS 107.105(1)(d) were not intended to create any new bases for spousal support, other than the functional recharacterization of enhanced earning capacity from an item of property to a basis of support. While those amendments altered and limited the *form* or *manner* in which one spouse's cognizable contribution to the other's earning capacity was to be compensated, they did not substantially alter and enlarge the *circumstances* giving rise to such an entitlement. In particular, the 1999 amendments did not confer an entitlement to spousal support based merely on contributions to the other spouse's education without regard to enhanced earning capacity.

The majority's construction of ORS 107.105(1)(d)(B) contradicts that legislative intent: "Nothing in ORS 107.105(1)(d)(B) requires that the contribution to the other spouse's education, training, vocational skills, or career must have resulted, actually or potentially, in an economic benefit in order for the court to consider whether an award of compensatory spousal support is just and equitable under the statutory factors." 191 Or App at 314. Thus, the majority holds that the 1999 amendments created a new basis for spousal support, completely divorced from actual or potential future enhancement of earning capacity. *Cf. Kunze and*

*Kunze*, 181 Or App 606, 47 P3d 489, *rev allowed*, 335 Or 114 (2002) (construing "enhanced earning capacity" provision of former property division statute, ORS 107.105(1)(f) (1997), and concluding that, although wife had contributed to husband's procurement of a degree in construction management, where there was no evidence that husband had ever been employed in that field or would make any economic use of that degree in the future, wife's contributions were not cognizable under the property division statute).

A few hypotheticals illustrate the implications of the majority's construction: Husband, an avid amateur fisherman, has taken fly-tying courses at Umpqua Community College for several years, and the cost of tuition has been paid from wife's earnings. Is wife entitled to compensatory support? Ten years ago, wife, who loves literature, audited several quarters of literature courses at Eastern Oregon University, while husband assumed "disproportionate" obligations at home. Is husband entitled to compensatory support? The 1999 legislature never intended to create an entitlement to compensatory support based on such circumstances. When properly construed, ORS 107.105(1)(d)(B) does not countenance that result.

I return, then, to the propriety of the trial court's award of compensatory spousal support in this case. Here, although husband and wife both expended a great deal of time and energy attempting to further husband's various academic and career aspirations, those efforts yielded minimal economic benefit. Bluntly: Husband started his law enforcement career in the early 1970s in a deputy-level position; he was in a deputy position at the time of the dissolution; and he will end his career in law enforcement several years hence as a deputy. The position does not require a college degree. Thus, although husband's education may have provided him with an *opportunity* to enhance his earning capacity as a law enforcement officer, it is undisputed that he has not, in fact, received anything more than a slight increase in his hourly wage as a result of having a bachelor's degree. In sum, it is undisputed that husband is nearing retirement, has never obtained any notable economic benefit from his bachelor's degree, and has no expectation of being able to do

so, given his age and health. Given those circumstances, the trial court erred in awarding compensatory spousal support under ORS 107.105(1)(d)(B).[4]

---

[4] I emphasize that my application of ORS 107.105(1)(d)(B) to these circumstances is, necessarily, fact-specific. For example, I imply no view as to the statute's proper application in circumstances in which one spouse has substantially contributed to the other spouse's professional education, greatly enhancing the other's potential earning capacity, and the latter elects not to pursue, or elects to abandon, that professional path. *Cf. Harper and Harper,* 122 Or App 9, 13, 856 P2d 334, *rev den,* 318 Or 246 (1993), *cert den,* 511 US 1108 (1994) (interpreting earlier, but similar, provisions, and concluding that spousal support could be based on potential rather than actual income).