242 P.3d 697 (2010)
238 Or. App. 172
In the Matter of the MARRIAGE OF James David HOOK, Petitioner-Respondent, and
Marie Moreland HOOK, Respondent-Appellant.
06C33821; A139210.
Court of Appeals of Oregon.
Argued and Submitted January 15, 2010.
Decided October 27, 2010.
*698 Gilbert B. Feibleman, Salem, argued the cause for appellant. With him on the briefs were Stephanie F. Wilson and Feibleman & Case, P.C.
Lauren Saucy, Salem, argued the cause and filed the brief for respondent.
Before HASELTON, Presiding Judge, and BREWER, Chief Judge, and DEITS, Senior Judge.
BREWER, C.J.
Our task on appeal in this dissolution case is to determine whether the trial court erred in setting the amount and duration of the various components of spousal support-transitional, compensatory, and maintenancethat it awarded to wife. On de novo review, ORS 19.415(3) (2007),[1] we modify each component of the award in the respects described below.
The parties were married for 21 years, and they cohabited for more than a year before their marriage. At the time of trial, wife was 54 years old, husband was 56, and the parties' minor children were 14 and 12 years of age. Wife was awarded custody of the children, and child support was set in the amount of $1,393 per month. Husband was awarded parenting time with the children. Those issues were not contested at trial, nor are they disputed on appeal.
At the time of the marriage, wife was employed as an occupational therapist and husband was an assistant psychology professor at a medical school. During the marriage, both parties became interested in attending medical school. Because husband was two years older, the parties decided that his education and career would take priority. So that he could attend school on a fast track, husband quit his job and began medical school in 1988. Wife applied to medical school a year later but was not accepted at that time.
The parties liquidated their assets and obtained loans for husband's educational expenses, and they planned to repay the loans during the marriage. Over the course of his education, husband accumulated $113,000 in student loans, including his premarital loans. The parties also borrowed $20,000 from husband's parents, and they liquidated husband's retirement account, which was worth $21,000. The loan from husband's parents was eventually forgiven.
Husband struggled academically in his first year of medical school and was placed in an alternative program that permitted him to take fewer courses at a time. As a result, wife deferred her own plans to enter medical school and, instead, remained focused on taking responsibility for the family's finances, including assuming the role of primary wage earner. Husband worked part-time as a research scientist during his first two years of medical school. Wife earned between $20,000 and $40,000 per year while husband was in medical school. In addition, wife ensured that husband had no distractions at home so that he could devote his full attention to study. Wife also researched and played a major role in selecting the Mayo Clinic as husband's place of medical residency.
*699 Because the parties' first child was born prematurely in 1993, wife took five months off from work to care for him. When she returned to work, wife was able to secure only part-time employment. After husband graduated from medical school in 1994, the parties moved to Minnesota so that husband could begin his residency work. Wife obtained new work there and continued her primary roles as wage earner, parent, and homemaker throughout husband's residency. During that period, the parties' second child was born. After a brief maternity leave, wife returned to work to continue supporting the family.
Husband finished his residency in 1997, and the parties moved to Oregon to advance his career. After the move, the parties decided that wife would become a full-time homemaker to care for their children. She continued to perform that role, remaining outside the employment work force, for nine years. Husband bought into a medical practice where he continues to work as a physician specializing in physical medicine and rehabilitation. He also became a rehabilitation section chief and medical director for a hospital. Over time, husband used his practice income to pay the $42,545 purchase price for the medical practice.
After the parties moved to Oregon, husband's parents, who each suffered from health problems, came to live with them. The parties bought a residence, and husband's parents provided the parties with $40,000 to pay for remodeling expenses to accommodate their living needs. Husband's mother lived with the parties for about one year, eventually moving to a care facility after she suffered a stroke. Husband's father lived with the parties until he passed away in 2005. Until they died, wife assisted husband's parents with many of their needs to free husband from those concerns. After husband's parents died, husband received an inheritance of $30,000, which the parties invested in their residence.
In 2005, wife obtained part-time employment as an occupational therapist and was so employed at the time of trial, working an average of 12 to 15 hours per week. Wife's lack of education and her age-related physical limitations have hindered her ability to obtain full-time employment as an occupational therapist.
After beginning his medical practice, husband's income began to steadily increase, doubling in the first year. By 2005, husband was earning a gross annual income of $281,000. Between 2003 and 2007, husband earned an average of $240,000 per year. At the time of trial, wife asserted that husband's monthly gross income was $22,760, husband claimed that it was $16,873 per month, and the trial court found that it was $19,992 per month. The trial court's finding was based on the average of husband's earnings over the previous five years. Wife's monthly gross income was $1,961 at the time of trial.
Despite husband's growing income, the parties' marital estate was relatively small at the time of dissolution. Their residence was worth $110,716, husband's medical practice was worth $63,370, and they had retirement accounts valued at $337,993. Husband's recent income had been devoted in significant part to retiring his student loans. The trial court equally divided the marital property, with wife receiving the family residence and $115,077 in net retirement accounts, which, in addition to the personal property awarded to her, yielded her a property division award of $250,236.
Wife proposed that she not steadily increase her working hours but, instead, pursue an education plan under which she sought $1,000 per month as nontaxable transitional support for seven years. Wife proposed to obtain master's and doctoral degrees by the end of that period, while continuing to work an average of 18 to 20 hours per week. For the first two years, the trial court awarded wife transitional support in the amount of $1,000 per month, maintenance support in the amount of $2,000, and compensatory support in the amount of $3,000 per month. The trial court awarded wife maintenance support in the amount of $4,000 per month for the following two years and $3,000 per month for an indefinite period thereafter. In sum, wife was awarded $6,000 in combined spousal support for the first two years, $4,000 per month for the succeeding *700 two years, and $3,000 per month thereafter on an indefinite basis.
On appeal, wife raises two assignments of error. She first asserts that the trial court erred in failing to award her indefinite compensatory support. In her second assignment of error, wife asserts that the court erred in setting the initial amount and duration of both maintenance and transitional spousal support. In particular, wife argues that, by reducing maintenance support for the first two years, the court largely negated the compensatory support award. Moreover, wife contends, the step-down in maintenance support was set to occur too soon; according to wife, the reduced level of $3,000 per month in indefinite maintenance support should not take effect until the end of her planned seven-year education period. Finally, as part of her second assignment of error, wife argues that the transitional support award should continue for seven years, not two years.
This case presents the issue, in yet another iteration, of how the various categories of statutorily authorized spousal support should coalesce in amount and duration to provide a just and equitable overall support award following the dissolution of a long-term marriage where substantial inequalities exist in the parties' earning capacities and one party has measurably helped the other advance his or her career and earning capacity.
The court is authorized by ORS 107.105(1)(d) to award spousal support in an amount and for a duration that is "just and equitable" Spousal support can take the form of transitional, compensatory, or maintenance support. Transitional support is appropriate "as needed for a party to attain education and training necessary to allow the party to prepare for reentry into the job market or for advancement therein." ORS 107.105(1)(d)(A).
Compensatory spousal support is appropriate
"when there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances. The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:
"(i) The amount, duration and nature of the contribution;
"(ii) The duration of the marriage;
"(iii) The relative earning capacity of the parties;
"(iv) The extent to which the marital estate has already benefited from the contribution;
"(v) The tax consequences to each party; and
"(vi) Any other factors the court deems just and equitable."
ORS 107.105(1)(d)(B). Thus, the statute sets out a two-step inquiry. First, the court must decide whether the party requesting compensatory spousal support demonstrates that he or she made a "significant financial or other contribution * * * to the education, training, vocational skills, career or earning capacity of the other party." Austin and Austin, 191 Or.App. 307, 314, 82 P.3d 170 (2003) (emphasis in original); accord Garza and Garza, 201 Or.App. 318, 326-27, 118 P.3d 824 (2005). Second, even if the spouse meets that threshold requirement, the trial court may award compensatory spousal support only if it determines that such an award is "otherwise just and equitable in all of the circumstances," ORS 107.105(1)(d)(B), including the factors set out in the statute. Austin, 191 Or.App. at 314, 82 P.3d 170; accord Garza, 201 Or.App. at 327, 118 P.3d 824.
The purpose of maintenance support, in contrast, is to allow one spouse who is financially able to contribute to the support of the other spouse the time necessary to allow the dependent spouse to become financially independent and self-supporting. Roppe and Roppe, 186 Or.App. 632, 635 n. 4, 64 P.3d 1145 (2003). In deciding how much and for how long maintenance support should be ordered, we do not attempt merely to eliminate any disparities in the parties' incomes or to enable one spouse to look to the other indefinitely for support. Wolhaupter-Heinzel and Heinzel, 108 Or.App. 514, 521, 816 P.2d 672, rev. den., 312 Or. 526, 822 P.2d 1195 (1991). In determining the amount and *701 duration of support, we keep in mind "`the goal of ending the support-dependency relationship within a reasonable time if that can be accomplished without injustice or undue hardship.'" McLauchlan and McLauchlan, 227 Or.App. 476, 489, 206 P.3d 622, rev. den., 346 Or. 363, 213 P.3d 577 (2009) (quoting Taylor and Taylor, 136 Or.App. 416, 419, 902 P.2d 120 (1995)). Additionally, the court must consider the other financial provisions of the judgment, and none can be considered in isolation. Grove and Grove, 280 Or. 341, 344, 571 P.2d 477, modified on other grounds, 280 Or. 769, 572 P.2d 1320 (1977). Factors relevant to an award of maintenance support include the duration of the marriage, the ages of the parties, the physical and emotional health of the parties, the standard of living established during the marriage, the parties' relative incomes and earning capacities, the parties' training, employment skills and work experience, their financial resources and needs, and the tax consequences of an award. ORS 107.105(1)(d)(C).
Before we consider the merits of the parties' legal arguments about the proper makeup, including categorization, duration, and amount of the spousal support award in this case, we first must resolve a factual dispute between the parties concerning wife's earning capacity. As supplemented below, we adopt the trial court's findings regarding wife's earning capacity and need for further education:
"A. * * *
"2) * * * Wife is 54 and will be competing in the job market with much younger applicants. The type of work that wife is currently trained to do is physically demanding (lifting patients). As wife ages, it is likely to become increasingly difficult for her to continue to meet the physical demands of the work for which she is trained.
"3) * * * Wife has some physical limitations due to prior injuries and surgeries that impact her ability to perform the physically demanding tasks associated with her profession. * * *
"* * * * *
"5) Wife's age, training and current employment skills are limited and, even after additional education, she will not have the earning capacity of husband. Wife has been employed only sporadically during the parties' marriage. Wife has not been significantly employed outside the home since 1996.
"B) * * *
"* * * * *
"2) Wife needs to obtain additional education and training to advance in the job market in an effort to lessen her financial dependency on husband. The minimum education requirements for occupational therapists entering the workforce have increased; entry-level positions now require a master's degree. Wife has only a bachelor's degree. Wife is at a disadvantage as she will be competing in the job market against significantly younger applicants who are more highly educated.
"The type of work that Wife is currently trained to do is physically demanding (lifting patients). Typical job postings require applicants to be able to transfer 75 pounds and lift 50 pounds unaided using appropriate body mechanics. * * * Wife put her educational goals on hold so that Husband's career could come first.
"* * * * *
"4) * * * Husband has a far greater earning capacity than Wife. Wife's needs cannot be met from her income in that Wife is unable to secure permanent, full-time employment that would produce sufficient income to be self-supporting with her current education and work experience. Even after education, the financial disparity will still be substantial."
Notably, the trial court did not include in its findings an estimate of wife's earning capacity on a going forward basis. For our purposes, such a determination is an important part of the analysis. The parties agree that, in the first year after the dissolution, wife's after tax (net) earning capacity was $1,421 per month. However, their views sharply diverge from that point forward. According *702 to wife, her net earning capacity likely would remain fixed for the indefinite future. Husband sees things differently. Under his view, wife's net earning capacity would increase to $3,530 per month for the next three years, and rise to $4,706 per month indefinitely thereafter. The differences, according to husband, are based on the assumptions that wife would work 30 hours per week in the second, third, and fourth years, and 40 hours per week thereafter. Husband bases those projections on wife's trial testimony and the testimony of her employer. Wife disagrees with husband's characterization of the evidence, as do we. Wife earned $38 per hour at the time of trial. The best evidence is that she could earn a gross income of $3,000 per month, or $2,160 per month after taxes, working about 18 hours per month while attending school.
Wife's educational plan, which included obtaining a master's degree, was a reasonable one up to that point. The evidence showed that wife would obtain a master's degree in occupational therapy in the spring of 2012, at age 58. Wife planned to work well into her 60's. According to the persuasive evidence, that degree, coupled with other relevant factors including her age, health, and work experience, likely would permit her to earn $6,536 per month ($38 per hour times 40 hours per week times 4.3 weeks per month) in gross income, or $4,706 net, after four years following the dissolution. There is nothing in the record to indicate that wife could not obtain full-time employment with that additional level of education. By contrast, if she were to continue forward with her plan to obtain a doctorate, wife would complete her education plan at age 60, with little persuasive evidence that her earning capacity would be demonstrably higher.
Based on the trial court's findings, our own supplemental findings, and the spousal support award that the trial court made, the following table sets out a reasonable estimate of the parties' respective net household incomes on a going forward basis:

---------------------------------------------------------------------------------------
 First two Years three
 Wife years and four Indefinite
---------------------------------------------------------------------------------------
Spousal support $6,000 $4,000 $3,000
---------------------------------------------------------------------------------------
Tax cost at 28% ($1,680) ($1,120) ($840)
---------------------------------------------------------------------------------------
Net benefit to Wife $4,320 $2,880 $2,160
---------------------------------------------------------------------------------------
Net Wage to Wife $1,421 $1,960 $4,706
---------------------------------------------------------------------------------------
Child Support for 2 $1,393 $1,393 $1,393
---------------------------------------------------------------------------------------
Wife's net funds available for 3 $7,134 $6,233 $8,259
---------------------------------------------------------------------------------------
---------------------------------------------------------------------------------------
Husband
---------------------------------------------------------------------------------------
Spousal support ($6,000) ($4,000) ($3,000)
---------------------------------------------------------------------------------------
Tax benefit +1,680 +$1,120 +$840
---------------------------------------------------------------------------------------
Net cost of support ($4,320) ($2,880) ($2,160)
---------------------------------------------------------------------------------------
Net Wage of Husband $14,394 $14,394 $14,394
---------------------------------------------------------------------------------------
Child Support for 2 ($1,393) ($1,393) ($1,393)
---------------------------------------------------------------------------------------
Husband's net available for 1 $8,681 $10,121 $10,841
---------------------------------------------------------------------------------------
---------------------------------------------------------------------------------------
Disparity in Net Monthly Household Income $1,547 $3,888 $2,582
---------------------------------------------------------------------------------------

With those projections as a foundation, we address the parties' legal arguments. We begin with the transitional support award, because it addresses wife's most pressing short-term needs and, thus, sets the table for consideration of the other, more durable, components of the spousal support award. Wife asserts that the award should extend for the full seven-year duration of her proposed education plan. As noted, the trial court awarded two years of transitional support. Because we have found that wife's plan to obtain a master's degree is reasonable, we extend the duration of the transitional support award to expire on June 1, 2012, the approximate estimated completion date for securing a master's degree set out in wife's education plan.
*703 We turn to wife's argument pertaining to compensatory support. We address that issue next for two reasons: First, the circumstances under which such an award can be modified are more limited than is the case with maintenance support. ORS 107.135(3)(a). Accordingly, a compensatory support award ordinarily is more secure. Second, the amount and duration of compensatory support will inform the extent to which a maintenance support award is necessary to allow wife to become financially independent and self-supporting.
Wife asserts that the trial court erred by limiting the $3,000 per month compensatory support award to two years and "subsidizing that award by reducing maintenance support [by $2,000 per month] during the same two-year period." In wife's view, that reduction makes the award "no more than $1,000 per month of taxable support or a total of $24,000 (before taxes) as compensation." For the following reasons, we agree with wife that the compensatory support award is inadequate.
We first discussed compensatory spousal support under the current version of the statute in Austin, which made clear that, to be entitled to compensatory spousal support, the party claiming such support must meet the threshold requirement that the party has made a "significant financial or other contribution" to one of several areas described in the statute. 191 Or.App. at 314, 82 P.3d 170. The significant contribution is not limited to enhancing the earning capacity of the other party because that is only one of the "areas to which a spouse may contribute in order to meet the threshold requirement for compensatory spousal support." Id. A contribution to the education, training, or career of the other party is sufficient. Id. If a party meets the initial threshold, then the court must determine whether a compensatory spousal support award is "otherwise just and equitable in all of the circumstances." Id.
In English and English, 223 Or.App. 196, 209, 194 P.3d 887 (2008), in describing why the wife met the initial threshold for an award of compensatory spousal support, this court stated:
"We believe that the trial court's award of compensatory spousal support was proper under ORS 107.105(1)(d)(B). First, we find that wife has met the threshold requirement of a significant contribution to husband's training, career, and earning capacity. As stated earlier, wife's maintenance of the marital home and responsibility as the primary custodial parent to the parties' two children for 11 years, as well as her homemaker contribution in the years before the separation, allowed husband to advance his career with Jeld-Wen and to enhance his yearly income. Because of wife's contribution in that manner, husband was able to obtain training and education during his employment and advance within the corporate hierarchy. Husband directly and indirectly benefitted in his career and earning capacity from wife's contribution to the marriage."
In the present case, there is no doubt that wife has met the initial threshold of making a significant contribution to the education, training, and career of husband. As noted above, the trial court found that wife was employed outside the home while husband was a student, thereby allowing husband to obtain his medical degree, complete his residency, and pursue his career as a doctor. Obviously, this also enhanced his earning capacity. In addition, wife performed homemaking duties, helped his parents with their needs, and was the primary caregiver for the children throughout the marriage.
Because we find that the statutory threshold has been met, the next step is to determine whether the award to wife was "just and equitable in all the circumstances." To make that determination, we must consider the nonexclusive list of factors enumerated in ORS 107.105(1)(d)(B). That determination is fact specific. Austin, 191 Or.App. at 321, 82 P.3d 170. With regard to the factors described in ORS 107.105(1)(d)(B)(i) and (ii), we have already determined that wife provided substantial support to husband's career during a long-term marriage. Under ORS 107.105(1)(d)(B)(iii), the evidence showed a stark contrast in the relative earning capacities of the parties that will not be offset by the further education that wife plans to obtain. *704 Thus, the evidence reflects that this was a long-term marriage where wife contributed to husband's professional success and earning capacity and that there will be lifelong disparities in the parties' earning potential.
ORS 107.105(1)(d)(B)(iv) directs consideration of "the extent to which the marital estate has already benefitted from the contribution[s]." That factor requires the court to look at the totality of the dissolution judgment, specifically to the property division, to determine how, and if, spousal support should be awarded based on the property division ordered by the court. See Miller and Garren, 208 Or.App. 619, 145 P.3d 285 (2006) (equitable principles that underlie a spouse's claim for a share of property and that spouse's claim for spousal support may overlap). Here, the parties' marital estate had not yet benefitted greatly from husband's earning capacity as a physician. Although wife received a property award worth approximately $250,000, there is every reason to believe that that amount would have been much higher over time had the marriage endured. During the marriage, the parties elected to repay husband's premarital and medical student loans, which totaled more than $110,000, not counting interest. Additionally, marital income was used to pay the purchase price for husband's interest in his medical practice. All of those decisions furthered husband's career instead of building a marital estate. The equal division of property in this case does not materially reduce wife's entitlement to compensatory spousal support.
Here, during their long-term marriage, wife supported husband's numerous educational and training efforts and moves by assuming the major responsibility for the parties' home and children, working outside the home, and assisting husband with his studies. She agreed to husband's liquidation of assets and assumption and repayment of debt to allow him to pursue his education. Wife strongly supported husband's educational and career objectives, while deferring her own educational and career plans, with the understanding that the parties' joint efforts would ultimately pay off in improved financial circumstances. Considering the factors set forth in ORS 107.105(1)(d)(B), especially the length of the marriage, wife's long-term contributions to husband's professional success and earning capacity, and the lifelong disparity in the parties' earning capacities, we conclude that an award of compensatory support in the amount of $3,000 per month for a 10-year period is just and equitable under the circumstances.
Finally, we turn to wife's challenge to the amount of the maintenance support award at various intervals. Initially, we agree with wife that it was inappropriate to reduce the maintenance award during the first two years after dissolution. As wife argues, that reduction had the effect of diluting the compensatory support award at a time when wife would have a great need for support because of her low employment income, her educational plans, and her duties as primary caretaker for the children. Considering the duration of the marriage, the ages of the parties, wife's physical limitations, the standard of living established during the marriage, the parties' relative incomes and earning capacities, the parties' training, employment skills and work experience, their financial resources and needs, and the tax consequences of an award, we conclude that maintenance support should be awarded in the amount of $2,000 per month for four years following the dissolution so that, when combined with the transitional and compensatory awards, the total spousal support award will be $6,000 per month during that period. Thereafter, maintenance support shall continue at $1,000 per month for an additional six years. At the end of 10 years following the dissolution, when the compensatory support award expires, the maintenance award shall increase to $3,500 per month, to continue indefinitely thereafter.
That composite award, in contrast to the award made by the trial court, will provide wife with a higher level of support while she obtains her master's degree and the children remain at home, and it will more adequately recognizeby not diluting the compensatory awardher contributions to husband's career and earning capacity over an extended *705 period of time. On the indefinite end of the range, the overall support award will nearly converge with the trial court's award, in recognition of wife's improved earning capacity after she obtains her advanced degree.
Reversed and remanded for entry of judgment (1) awarding wife transitional spousal support of $1,000 per month until June 1, 2012; (2) awarding wife compensatory spousal support of $3,000 per month for 10 years; and (3) awarding wife maintenance spousal support of $2,000 per month for four years, $1,000 per month for the next six years, and $3,500 per month thereafter; otherwise affirmed.
NOTES
[1] The 2009 amendments to ORS 19.415(3) do not apply to this case because the notice of appeal was filed in 2008. Or. Laws 2009, ch. 231, § 3.