Argued and submitted April 22, affirmed September 9, petition for review allowed December 23, 2009 (347 Or 446)

In the Matter of the Marriage of

Jackie L. HARRIS,
*Petitioner-Appellant,*
*and*

Lane S. HARRIS,
*Respondent-Respondent.*

Benton County Circuit Court
0630166; A136179

217 P3d 224

J. Michael Alexander argued the cause for appellant. With him on the briefs was Swanson, Lathen, Alexander, McCann & Prestwich, PC.

Gilbert Feibleman argued the cause for respondent. With him on the brief was Feibleman & Case, P.C.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

In this dissolution of marriage case, wife assigns error to the trial court's award of spousal support, arguing that the court erred in failing to award compensatory spousal support and in determining the level and duration of maintenance spousal support. We affirm the trial court's award of maintenance spousal support without discussion; we write solely to address the issue of compensatory spousal support. On *de novo* review, ORS 19.415(3) (2007),[1] we conclude that the trial court's rationale for denying compensatory spousal support—that wife's "contribution during the marriage" was "typical and expected" and was not a "substantial contribution that enhanced [h]usband's earning potential or will enhance his earning potential in the future"—was wrong, but that the decision to deny compensatory spousal support was nonetheless correct because such an award would not have been just and equitable. ORS 107.105(1)(d)(B). We therefore affirm.

Wife and husband were married in March 1990. At that time, husband was a full-time college student, while wife worked full time for the State of Oregon and attended college classes part time. In 1992, husband completed his undergraduate degree and began dental school. Wife continued to work full time and to attend classes "sporadically," but stopped attending classes in 1993 after the parties' first child was born. Thereafter, the parties shared childcare and household responsibilities, with wife assuming the larger portion. Wife's job provided the family with financial support and health insurance. Husband also contributed to the family finances during dental school by way of student loans, money earned working occasionally in his father's dental office and at a few odd jobs, and, during one year, monthly $1,000 workers' compensation payments.

In 1996, husband graduated from dental school and joined his father's dental practice. He immediately began to earn more than $100,000 annually and became the family's primary wage-earner. After the parties' second child was

---

[1] The 2009 amendments to ORS 19.415(3) do not apply to this case because the notice of appeal was filed in 2007. Or Laws 2009, ch 231, § 3.

born in 1997, wife left her employment and assumed primary childcare and household responsibilities.

In 1998, husband's father sold husband an interest in his practice at a substantially below-market price. Thereafter, husband's earned income increased dramatically, averaging slightly more than $355,000 per year from 2002 to 2005 and more than $407,000 in 2006, in addition to rental income in each of those years averaging $23,000. Among other things, husband's financial success enabled the parties to build a four-bedroom, 3,252 square foot home on 1.21 acres; lease luxury vehicles; purchase a high-speed motorboat and a time-share in Mexico; take several family vacations each year; and join a country club.

Sometime in 1999, wife began to work in husband's business approximately 10 hours each week planning office parties, making bank deposits, paying bills, completing data entry, mailing letters, and running errands. She continued to do so until the parties separated in February 2006, after approximately 16 years of marriage.

At the time of trial in April 2007, husband was 37 years old, and wife was 38 years old. Both parties were in good health. Wife testified that she intended to complete her undergraduate degree and to pursue a graduate degree in business, but that, even if she did not, she could earn between $30,000 and $40,000 per year as a state employee, at a job for which she is already qualified. The trial court awarded wife custody of the parties' children and divided the real and personal property equally; each party received assets valued at $720,402. The court further ordered that husband pay wife $1,087 per month in child support; $3,000 per month in transitional spousal support for four years; and $4,000 per month in maintenance spousal support for six years, stepped down to $2,500 per month for two years followed by $1,000 per month for one year. Regarding compensatory spousal support, the court made the following findings:

> "18. Both parties have contributed to the accumulation of assets during the marriage. Wife primarily in the early years while she was working and Husband was going to school. Although, Husband also contributed to the family at that time, as well. Husband substantially contributed

after his dental practice became established. The contributions by both Husband and Wife to this marriage has resulted in over $1,000,000 in net assets that the parties are dividing. The parties agreed that Husband would be going to dental school, and that Wife would be primarily taking care of the children when they decided to have children, and they both have benefitted from that agreement, and they are now in the process of dividing up the assets from those agreements.

"19. As to the issue of compensatory spousal support, the court does not mean to minimize Wife's contributions however Wife's contribution was a typical contribution for a spouse at the age and place in their lives where the parties were when they got married, and Wife's contribution during the marriage was also a typical and expected contribution. Wife's contributions were not a substantial contribution that enhanced Husband's earning potential or will enhance his earning potential in the future. Compensatory spousal support is not appropriate."

Neither child support nor transitional spousal support is at issue on appeal. And, as noted, we affirm the trial court's award of maintenance spousal support without discussion. We write to discuss only the parties' arguments concerning the award of compensatory spousal support.

 Compensatory spousal support is appropriate

"when there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances. The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:

"(i) The amount, duration and nature of the contribution;

"(ii) The duration of the marriage;

"(iii) The relative earning capacity of the parties;

"(iv) The extent to which the marital estate has already benefited from the contribution;

"(v) The tax consequences to each party; and

"(vi) Any other factors the court deems just and equitable."

ORS 107.105(1)(d)(B). Thus, the statute first sets out a two-step inquiry. First, the court must decide whether the party requesting compensatory spousal support demonstrates that he or she made a "significant financial or other contribution * * * to the education, training, vocational skills, career or earning capacity of the other party," *id. Austin and Austin*, 191 Or App 307, 314, 82 P3d 170 (2003); *accord Garza and Garza*, 201 Or App 318, 326-27, 118 P3d 824 (2005). Second, even if the spouse meets that threshold requirement, the trial court may award compensatory spousal support only if it determines that such an award is "otherwise just and equitable in all of the circumstances," ORS 107.105(1)(d)(B), including the factors set out in the statute. *Austin*, 191 Or App at 314; *accord Garza*, 201 Or App at 327.

On appeal, wife argues that she contributed to husband's "education, training, vocational skills, career or earning capacity" by working full time while husband attended undergraduate and dental school; by helping him to establish his dental practice; and by assuming primary homemaking and childcare responsibilities. She contends that, even if those contributions were "typical and expected," as the trial court found, they were nonetheless sufficiently "significant" to satisfy the threshold requirement in ORS 107.105(1)(d)(B). Moreover, she maintains, her contribution may be considered "significant" even if it did not result in a quantifiable increase in earning capacity, as long as it significantly contributes to the other spouse's education, training, vocational skills, or career. She further argues that an award of compensatory spousal support in this case is "just and equitable" because the assets accumulated during the marriage represent only "a small fraction" of husband's "lifetime earning potential" and because her own earning capacity "will never approach" that of husband. Husband responds that wife's contributions do not qualify as "significant" and that, even if they do, "the marital estate more than benefitted from th[ose] contribution[s] such that an extra award of support would be inequitable."

■ We agree with wife that one spouse's contribution is not necessarily insignificant for purposes of ORS

107.105(1)(d)(B) merely because that contribution might appear, to some people, "typical" or "expected" in light of the parties' "age and place in * * * li[fe]." The trial court's reliance on those normative considerations as a basis for denying compensatory spousal support was error. Further, a quantifiable increase in earning capacity—indeed, any increase in earning capacity—is not a necessary predicate. *Austin*, 191 Or App at 314.

Nonetheless, on *de novo* review, we must make our own determination whether an award of compensatory spousal support is "just and equitable in all of the circumstances," ORS 107.105(1)(d)(B); *see Talik and Talik*, 226 Or App 67, 76, 202 P3d 267 (2009) (affirming trial court's denial of compensatory spousal support on the basis that such an award would not have been "just and equitable" despite trial court's erroneous reliance on one party's abusive behavior). In the present case, we conclude that it is not. Assuming, for purposes of appeal, that wife's contributions were "significant," we nonetheless conclude that the trial court properly declined to award compensatory spousal support. Although it is true that wife helped to support husband financially while he attended school, worked in husband's dental practice, and assumed primary homemaking and childcare responsibilities following the birth of the parties' second child, it is also true that, to the extent that those actions contributed to husband's financial success, that contribution has been offset by the accumulation of nearly $1.5 million in marital assets and by the lifestyle that the parties enjoyed during the 10 years preceding their divorce. Moreover, in addition to the $720,240 in assets awarded to wife, the court also awarded her transitional and maintenance spousal support totaling $7,000 per month for four years, $4,000 per month for two years, $2,500 per month for two years, and $1,000 per month for one year. It follows, given the extent to which the marital estate has already benefitted from wife's contributions, husband's own contributions to the family funds during his education, and the trial court's total financial award to wife, that an award of compensatory spousal support in this case would not be "just and equitable."

Affirmed.