Argued and submitted May 13, decision of Court of Appeals modified in part and,
as modified, affirmed; judgment of circuit court modified in part and,
as modified, affirmed, and case remanded to circuit court for further
proceedings December 16, 2010

In the Matter of the Marriage of

Jackie L. HARRIS,
*Petitioner on Review,*

*and*

Lane S. HARRIS,
*Respondent on Review.*

(CC 0630166; CA A136179; SC S057887)

244 P3d 801

J. Michael Alexander, Swanson, Lathen, Alexander & McCann, PC, Salem, argued the cause and filed the brief for petitioner on review.

Gilbert Feibleman, Feibleman & Case, PC, Salem, argued the cause and filed the briefs for respondent on review.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

The issue in this dissolution of marriage case is whether the trial court erred in failing to award compensatory spousal support to wife. The trial court did not award compensatory support to wife, concluding that wife's contribution during the marriage was not a significant contribution that enhanced husband's earning potential. On appeal, the Court of Appeals held that the trial court's rationale for denying compensatory spousal support to wife—*viz.*, that wife's contribution during the marriage was typical and expected and not a substantial contribution that enhanced husband's earning potential—was wrong. Nevertheless, the Court of Appeals affirmed the trial court's decision, reasoning that an award of compensatory support would not be "just and equitable" under all the circumstances. We allowed review to address the proper standard for an award of compensatory spousal support under the marital dissolution statutes. We conclude that the Court of Appeals correctly determined that wife's contribution to the marriage constituted a significant contribution to the education, training, vocational skills, career, or earning capacity of husband so as to trigger consideration whether wife should receive an award of compensatory spousal support. However, the Court of Appeals failed to adequately consider all of the applicable factors set out in ORS 107.105(1)(d)(B) for determining the propriety of an award of compensatory spousal support. Applying the pertinent statutory factors to the undisputed facts in this case, we conclude that it is "just and equitable in all the circumstances" to award wife $2,000 per month in compensatory spousal support for a period of 10 years.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court of Appeals reviewed the facts in this case *de novo.* ORS 19.415(3) (2007).[1] Pursuant to ORS 19.415(4), this court also may review the facts *de novo*, or it may limit its review to questions of law. *See Kunze and Kunze*, 337 Or 122, 124, 92 P3d 100 (2004) (so noting). Here, the facts relevant to

---

[1] As the Court of Appeals noted, the 2009 amendments to ORS 19.415(3) do not apply to this case, because the notice of appeal was filed in 2007. Or Laws 2009, ch 231, § 3.

resolving the issues before the court are not in dispute. Instead, we must determine the legal significance of those facts. Consequently, there is no need for this court to review the facts *de novo,* and we set out here the statement of facts from the Court of Appeals opinion.[2]

"Wife and husband were married in March 1990. At that time, husband was a full-time college student, while wife worked full time for the State of Oregon and attended college classes part time. In 1992, husband completed his undergraduate degree and began dental school. Wife continued to work full time and to attend classes 'sporadically,' but stopped attending classes in 1993 after the parties' first child was born. Thereafter, the parties shared childcare and household responsibilities, with wife assuming the larger portion. Wife's job provided the family with financial support and health insurance. Husband also contributed to the family finances during dental school by way of student loans, money earned working occasionally in his father's dental office and at a few odd jobs, and, during one year, monthly $1,000 workers' compensation payments.

"In 1996, husband graduated from dental school and joined his father's dental practice. He immediately began to earn more than $100,000 annually and became the family's primary wage-earner. After the parties' second child was born in 1997, wife left her employment and assumed primary childcare and household responsibilities.

"In 1998, husband's father sold husband an interest in his practice at a substantially below-market price. Thereafter, husband's earned income increased dramatically, averaging slightly more than $355,000 per year from 2002 to 2005 and more than $407,000 in 2006, in addition to rental income in each of those years averaging $23,000. Among other things, husband's financial success enabled the parties to build a four-bedroom, 3,252 square foot home on 1.21 acres; lease luxury vehicles; purchase a high-speed motorboat and a time-share in Mexico; take several family vacations each year; and join a country club.

---

[2] Both parties to this proceeding expressly acknowledge that the facts set forth in the Court of Appeals opinion are accurate and adequate to resolve the issues on review. In their briefing in this court, both parties emphasize those facts that support their position on the issues presented. We set out the entire statement of facts from the Court of Appeals decision in order to provide the most complete background for the discussion that follows.

"Sometime in 1999, wife began to work in husband's business approximately 10 hours each week planning office parties, making bank deposits, paying bills, completing data entry, mailing letters, and running errands. She continued to do so until the parties separated in February 2006, after approximately 16 years of marriage.

"At the time of trial in April 2007, husband was 37 years old, and wife was 38 years old. Both parties were in good health. Wife testified that she intended to complete her undergraduate degree and to pursue a graduate degree in business, but that, even if she did not, she could earn between $30,000 and $40,000 per year as a state employee, at a job for which she is already qualified. The trial court awarded wife custody of the parties' children and divided the real and personal property equally; each party received assets valued at $720,402. The court further ordered that husband pay wife $1,087 per month in child support; $3,000 per month in transitional spousal support for four years; and $4,000 per month in maintenance spousal support for six years, stepped down to $2,500 per month for two years followed by $1,000 per month for one year."

*Harris and Harris*, 230 Or App 679, 681-82, 217 P3d 224 (2009).

■ As identified above, the issue in this case is whether wife is entitled to an award of compensatory spousal support and, if so, for how long.[3] The trial court made the following findings regarding compensatory support:

"18. Both parties have contributed to the accumulation of assets during the marriage. Wife primarily in the early years while she was working and Husband was going to school. Although, Husband also contributed to the family at that time, as well. Husband substantially contributed after his dental practice became established. The contributions by both Husband and Wife to this marriage has [*sic*] resulted in over $1,000,000 in net assets that the parties are dividing. The parties agreed that Husband would be

---

[3] In the Court of Appeals, husband also challenged the trial court's determination of the level and duration of maintenance spousal support. The Court of Appeals affirmed the trial court's ruling without discussion, and husband does not renew his challenge to that determination in this court. Consequently, we do not address the propriety of the maintenance spousal support award, but rather consider it appropriate for purposes of our consideration of the compensatory support issue presented in this case.

going to dental school, and that Wife would be primarily taking care of the children when they decided to have children, and they both have benefitted from that agreement, and they are now in the process of dividing up the assets from those agreements.

"19.   As to the issue of compensatory spousal support, the court does not mean to minimize Wife's contributions however Wife's contribution was a typical contribution for a spouse at the age and place in their lives where the parties were when they got married, and Wife's contribution during the marriage was also a typical and expected contribution. Wife's contributions were not a substantial contribution that enhanced Husband's earning potential or will enhance his earning potential in the future. Compensatory spousal support is not appropriate."

The Court of Appeals affirmed the trial court's ruling on that issue, but on grounds different from those relied on by the trial court. Before addressing the parties' arguments and the rulings made by the courts below, we first set out the statutory framework for spousal support awards in Oregon. We do so because it is the overall statutory framework that informs the analysis that should govern the specific statutory provisions addressed to compensatory support. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (context of statutory terms including other provisions or related statutes is relevant consideration at first-level text and context step of statutory interpretation methodology).

## II.   STATUTORY FRAMEWORK FOR SPOUSAL SUPPORT

At the outset, we observe that compensatory spousal support is one of the three categories of spousal support set out in ORS 107.105(1).[4] Those three categories of spousal

---

[4] ORS 107.105(1) provides, in part:

"Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(d)   For spousal support, an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both. The court may approve an agreement for the entry of an order for the support of a party. In making the spousal support order, the court shall designate one or more categories of spousal support and shall make findings of the relevant factors in the decision. The court may order:

support, although interrelated, serve different functions. Transitional spousal support provides support "as needed for

"(A)   Transitional spousal support as needed for a party to attain education and training necessary to allow the party to prepare for reentry into the job market or for advancement therein. The factors to be considered by the court in awarding transitional spousal support include but are not limited to:

"(i)    The duration of the marriage;

"(ii)   A party's training and employment skills;

"(iii)  A party's work experience;

"(iv)   The financial needs and resources of each party;

"(v)    The tax consequences to each party;

"(vi)   A party's custodial and child support responsibilities; and

"(vii)  Any other factors the court deems just and equitable.

"(B)   Compensatory spousal support when there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances. The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:

"(i)    The amount, duration and nature of the contribution;

"(ii)   The duration of the marriage;

"(iii)  The relative earning capacity of the parties;

"(iv)   The extent to which the marital estate has already benefited from the contribution;

"(v)    The tax consequences to each party; and

"(vi)   Any other factors the court deems just and equitable.

"(C)   Spousal maintenance as a contribution by one spouse to the support of the other for either a specified or an indefinite period. The factors to be considered by the court in awarding spousal maintenance include but are not limited to:

"(i)    The duration of the marriage;

"(ii)   The age of the parties;

"(iii)  The health of the parties, including their physical, mental and emotional condition;

"(iv)   The standard of living established during the marriage;

"(v)    The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi)   A party's training and employment skills;

"(vii)  A party's work experience;

"(viii) The financial needs and resources of each party;

"(ix)   The tax consequences to each party;

"(x)    A party's custodial and child support responsibilities; and

"(xi)   Any other factors the court deems just and equitable."

a party to attain education and training necessary to allow the party to prepare for reentry into the job market or for advancement therein." ORS 107.105(1)(d)(A). Spousal maintenance is "a contribution by one spouse to the support of the other for either a specified or an indefinite period." ORS 107.105(1)(d)(C). Compensatory spousal support provides compensation to one of the parties to the marriage "when there has been a significant financial or other contribution by [that] party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory support is otherwise just and equitable in all of the circumstances * * *." ORS 107.105(1)(d)(B). That statutory subsection then goes on to reiterate that the court should consider a number of factors in awarding compensatory support, including "[a]ny other factors the court deems just and equitable." ORS 107.105(1)(d)(B)(vi).

Significantly, the legislature went to substantial lengths to set out a number of criteria for consideration under each of the categories of spousal support. As the Court of Appeals noted in *Austin and Austin*, 191 Or App 307, 317, 82 P3d 170 (2003):

> "Under [ORS 107.105(1)(d)], courts are to designate one or more 'categories' of spousal support and are to make findings regarding the relevant factors. *Id.* Those categories of support are 'transitional,' 'compensatory,' and 'maintenance.' ORS 107.105(1)(d)(A), (B), (C). Each subparagraph pertains to a different type of spousal support and sets out a nonexclusive list of factors that a court is to consider in awarding that type of support. The final factor in each of the three lists is '[a]ny other factors the court deems just and equitable.' ORS 107.105(1)(d)(A)(vii), (B)(vi), (C)(xi). Nonetheless, that each of the three lists expressly includes particular factors indicates that the legislature considered those factors to be particularly relevant in awarding that type of spousal support."

Although there is some overlap with respect to some of the statutory factors that apply to more than one of the spousal support categories (*e.g.*, the duration of the marriage is a factor listed for evaluation under all three of the spousal support categories), each of the factors merits explicit consideration under each of the types of spousal support.

With that general discussion of the statutory framework as backdrop, we turn to the specific legal issues involved in this proceeding. Those issues are: Were wife's contributions to husband's education, training, vocational skills, career, or earning capacity significant enough to trigger consideration of an award of compensatory spousal support? If so, what amount of compensatory spousal support, if any, should wife be awarded based on the applicable statutory factors and for how long?

## III.   SIGNIFICANCE OF WIFE'S CONTRIBUTION

ORS 107.105(1)(d)(B) provides for an award of compensatory spousal support when "there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party * * *." The parties view the statutory requirement that a contribution be "significant" through different lenses.

Wife contends that the compensatory spousal support provisions essentially incorporate much of what was formerly found in the enhanced earning capacity statute, *former* ORS 107.105(1)(f) (1993). Wife notes that the archetypal example of a spouse who qualified for a property distribution award under the enhanced earning capacity statute was the wife who supported the husband in medical school by working and keeping the home. Wife argues that she would have qualified for a property distribution based on her contributions to husband's enhanced earning capacity under the former statute, and that she should, therefore, qualify for an award of compensatory spousal support under the current statute, based on her contributions to husband's education, career, and earning capacity.

Husband contends that, for wife's contributions to be "significant" under the compensatory spousal support statute, those contributions must be significant in some aspect that is separate and apart from contributions that are typical of a healthy marital relationship. Husband asserts that the statutory term "significant" connotes proof of something uncommon or special. Husband argues that "[t]he Oregon legislature did not enact a statute that allows for an award of compensatory support if there has been *some* contribution,

*any* contribution or a *normal or typical* contribution. The precondition to the consideration of such an award is the presence of a *significant* contribution." Husband further asserts that both maintenance support under ORS 107.105(1)(d)(C) and transitional support under ORS 107.105(1)(d)(A) take into account the normal and typical contributions of one spouse to the other by requiring consideration of factors such as the duration of the marriage in determining the appropriate level of those types of support.

We reject husband's arguments. Although it is true that the compensatory spousal support statute provides that contributions from one spouse to another must be significant, as husband himself notes, "significant" is defined essentially as "having meaning." *Webster's Third New Int'l Dictionary* 2116 (unabridged ed 2002) defines "significant" in pertinent part as:

> "**1:**  having meaning; esp: full of import : SUGGESTIVE, EXPRESSIVE ‹the painter's task to pick out the ~ details—Herbert Read› ‹~ anecdote›
>
> "* * * * *
>
> "**3a:**  having or likely to have influence or effect : deserving to be considered : IMPORTANT, WEIGHTY, NOTABLE ‹even though the individual results may seem small, the total of them is ~ - F. D. Roosevelt›

Thus, it appears at the first step in the interpretive process that, as long as the contributions of one spouse to the other are meaningful and are likely to have influence and effect, they come within the definitional scope of the statutory term "significant."

■ ■  Furthermore, as this court announced in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), the legislative history of a statute is also relevant in analyzing the scope of the statute and discerning legislative intent. Thus, the context of a statutory provision, including its prior versions, is helpful in determining its reach. Consequently, we turn to those inquiries.

Oregon spousal support statutes have long taken into account the contribution of one spouse to the education and training of the other spouse. The 1983 version of the

spousal support statutes provided that the contribution made by one spouse to the education, training, and earning capacity of the other spouse was an enumerated factor that the court should consider in awarding spousal support. Or Laws 1983, ch 728, § 2. In 1993, the legislature amended the spousal support statutes, retaining the provisions requiring consideration of the contribution of one spouse to the education, training, and earning capacity of the other spouse. The 1993 legislature, however, also added an "enhanced earning capacity" provision for the division of marital property, inserting the following terms into ORS 107.105(1):

> "(f) * * * The present value of, and income resulting from, the future enhanced earning capacity of either party shall be considered as property. The presumption of equal contribution to the acquisition of marital property, however, shall not apply to enhanced earning capacity. A spouse asserting an interest in the income resulting from an enhancement of earning capacity of the other spouse must demonstrate that the spouse made a material contribution to the enhancement. Material contribution can be shown by, among other things, having contributed, financially or otherwise, to the education and training that resulted in the enhanced earning capacity. The contribution shall have been substantial and of prolonged duration."

Or Laws 1993, ch 315, § 1.

In *Denton and Denton*, 326 Or 236, 951 P2d 693 (1998), this court addressed the provisions of *former* ORS 107.105(1)(f) (1993). The court first parsed the statute, noting that "[u]nder ORS 107.105(1)(f), those contributions that are 'material' 'to the education and training' that produce the enhancement, that are 'substantial,' and that are of 'prolonged duration' will justify an award for enhanced earning capacity." *Id.* at 243. The court then discussed the contributions that wife made to her husband's acquisition of his medical license and specialty:

> "During the period when husband was attempting to gain admission to medical school, and while husband was in medical school, wife worked full time, putting food on the family's table and a roof over their heads. Moreover, wife performed all domestic tasks during the entire period in which husband prepared himself for medical school,

attended medical school, and performed his dermatology residency in Iowa. That freed husband to devote all his energy and concentration to his studies, which directly facilitated his acquisition of the medical degree as well as his dermatology specialty.

"Wife also contributed directly to husband's educational expenses during medical school. The bulk of the financial aid that husband received during his attendance at OHSU was in the form of student loans that were later repaid with marital assets out of husband's salary after he graduated. However, those loans were lower than otherwise would have been the case, because wife supplied the income that kept the couple from having to borrow to pay living expenses while husband attended school. Additionally, * * * [wife's] continuing willingness to uproot, to relocate, and to find new employment constituted nonfinancial contributions to the enhancement."

*Id.* at 243-44. In *Denton*, this court concluded that those contributions, *"when considered together*, as they must be, were both material and substantial." *Id.* (emphasis in original).

Although *Denton* addressed a former version of the spousal support statutes and not the version of those statutes at issue in this case, this court's decision in *Denton* is relevant and significant here for at least two reasons. First, as wife argues, the enhanced earning capacity statutory terms at issue in *Denton* imposed at least as stringent requirements as the statute at issue here before the contributions of one spouse to the other would be considered sufficient to justify an award. Although the award in *Denton* was in the form of property distribution rather than a spousal support award, that distinction does not make the court's analysis of similar statutory terms inapplicable. Consequently, this court's decision in *Denton* is relevant in a logic and analytic sense. Second, this court's decision in *Denton* is significant in light of the subsequent amendments the legislature made to the spousal support statutes, in that the legislature did not increase the contribution requirement by one spouse to the other in response to the *Denton* decision.

In 1999, the legislature revised the spousal support statutes and amended ORS 107.105 to its present form.[5] Or

---

[5] There were some minor changes to ORS 107.105 in 2001 and 2003, but they do not affect the reach of the statute in any significant way for purposes of the analysis in this case. *See* Or Laws 2003, ch 576, § 109; Or Laws 2001, ch 873, § 5.

Laws 1999, ch 587, § 1. Those amendments repealed the enhanced earning capacity statute (ORS 107.105(1)(f)) and migrated some of the elements from the repealed enhanced earning capacity statute and the former spousal support provisions addressing compensatory-type awards into the new compensatory spousal support provision. The Court of Appeals has described the effect of those 1999 amendments as broadening the criteria for which a spouse could receive compensatory spousal support. In *Austin*, the Court of Appeals noted that in adopting the 1999 amendments, the legislature incorporated three types of contributions from the former statutes—*i.e.*, contributions to education, training, and earning power/capacity—and added two more—*i.e.*, contributions to vocational skills and career. 191 Or App at 318. The Court of Appeals also noted that "[t]he focus of ORS 107.105(1)(d)(B) [the compensatory spousal support provision] is more broadly directed toward assessing whether one spouse is entitled to compensation for certain contributions made to the other, a focus that is indicated by the legislature's choice of name for this type of spousal support: compensatory." *Id.* Finally, the Court of Appeals deemed it significant that the new statutory provision connected those five criteria with the disjunctive connector "or," which sets out each of the types of contribution as separate, independent factors, not all of which need be connected to increased earning capacity. *Id.* at 319.

■       We agree. As a linguistic matter, the new compensatory spousal support provision has broadened the kinds of contributions that can be considered beyond those numerated under the former enhanced earning capacity statute. They also no longer require that the contributions all must be connected to enhanced earning capacity. We thus conclude that the legislature did not intend the 1999 amendments to establish a higher threshold for an award of compensatory spousal support than previously existed for property distributions under the former enhanced earning capacity statute.

The legislative history of the compensatory spousal support provision also supports our conclusion. For example, the Staff Measure Summary before the Senate Judiciary Committee described the 1999 amendments, including the provisions that became ORS 107.105(1)(d)(B), as follows:

"In a suit for dissolution, the court has the power to make an award to either spouse for spousal support and an appropriate division of the marital property. *In determining the amount and duration of spousal support to award, ORS 107.105 requires that the court consider an enumerated list of criteria. This bill reorganizes that list into three separate types of spousal support (transitional, compensatory and maintenance).* Persons seeking spousal support would now have to argue that they fit into one of these categories before a court would award support. It should be noted that *each of the categories contains criteria similar to that currently existing in the statute.*

"ORS 107.105 also grants the court authority to award property to either spouse as is 'just and proper' under the circumstances. *An item of property that may be valued is the 'enhanced earning capacity' of either party.* The court may make such an award to a spouse if the spouse shows that they made a 'material contribution' to the enhanced earning capacity of the other spouse. A 'material contribution' can be a contribution to the education or training of the spouse who, as a result, enjoys a greater earning potential. *The classic example is the wife who supports the husband in medical school by working and keeping the home.* If upon completion of his medical training, the husband divorces the wife, she may make a claim that she materially contributed to his anticipated future higher earnings as a physician. *This bill will eliminate enhanced earning capacity as species of property. The bill, however, retains the concept of enhanced earning capacity within spousal support.*"

Staff Measure Summary, Senate Judiciary Committee, HB 2555, May 27, 1999 (emphases added).

The written testimony submitted before the House Civil Judiciary Committee by one of the chief proponents of the bill, Russell Lipetzky, also demonstrates that the bill was not intended to heighten the contribution required from spouses in order to qualify for support awards. In his written testimony on HB 2555, Lipetzky characterized the legislative proposal as follows:

"The enhanced earning capacity ('EEC') statute is found tucked into ORS 107.105(1)(f), which is a lengthy statute that provides the court with the general authority to divide property in a divorce. Since its inception, the EEC statute

has been a continuing source of confusion and frustration for divorcing couples, family law attorneys, and the courts. That confusion stems mostly from the requirement of the statute that an intangible future economic benefit—a party's future enhanced earning capacity—be translated (somehow) into a present day dollar value and divided (somehow) by the court in a divorce proceeding.

"* * * * *

"In allowing a party's enhanced earning to be characterized as spousal support, the drafters of this bill believe the goals of the EEC statute can be fully met, and that those goals can be met with much greater ease and understanding by all participants in the legal process."

Testimony, House Judiciary Committee/Civil, HB 2555, Feb 25, 1999, Ex C (statement of Russell Lipetzky). Lipetzky's testimony explicitly referenced this court's decision in *Denton and Denton*, but took no issue with the determination by this court about the necessary level of contribution by a spouse for an award under the enhanced earning capacity statute. Lipetzky stated: "Although the Oregon Supreme Court has attempted to shed light on the statute in *Denton*, 326 Or 236 (1998), that case left unanswered many questions about the practical application of the EEC statutes." *Id.*

Finally, another of the bill's drafters testified that the compensatory support aspects of the bill were not intended to create "any new ground," other than to treat the matter as a support issue rather than a property division issue. Tape Recording, House Judiciary Committee/Civil, HB 2555, Feb 25, 1999, Tape 48, Side A (statement of Ron Gevurtz). We think that it is a fair characterization that the 1999 amendments were not intended to substantially increase the burden on the contributing spouse to qualify for support, but rather to reorganize the support statutes in a manner that would promote greater ease in application.

The 1999 amendments continue to recognize the contributions of one spouse to the enhanced earning capacity of the other spouse, but they changed the manner of compensation from the division of marital property to compensatory

spousal support. In recharacterizing the means of compensating a contributing spouse, however, the 1999 amendments also had the effect of broadening the types of contributions by one spouse that will qualify for an award of compensatory spousal support. We conclude, therefore, that those amendments did not establish a higher threshold for qualifying for an award of compensatory support than previously existed for property distributions under the former enhanced earning capacity statute. Having reached that conclusion, we must now determine whether wife's contributions are "significant" as required under the compensatory support statute.

■ Husband characterizes wife's contributions as "typical" and "expected" household support activities in contrast to the "significant" contributions that he contends the statute requires. We disagree. The undisputed facts in this case show that wife contributed to husband's "education, training, vocational skills, career, or earning capacity" by working full time while husband attended both undergraduate and dental school. Wife's work provided the family with financial support and health insurance. Once husband established his dental practice, wife assumed primary homemaking and childcare responsibilities. Wife also worked part time in husband's dental practice for a period of seven years. We conclude that wife's contributions were "significant contributions" to husband's education and career sufficient to trigger consideration of a compensatory spousal support award under the relevant statutory criteria. *Cf. Denton*, 326 Or at 243-45 (analyzing contributions under former enhanced earning capacity statute). We now turn to consideration of the statutory criteria relevant to a determination of an appropriate compensatory spousal support award.

## IV. STATUTORY FACTORS FOR DETERMINING COMPENSATORY SPOUSAL SUPPORT AWARDS

ORS 107.105(1)(d)(B) provides, in part:

"The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:

"(i) The amount, duration and nature of the contribution;

"(ii)    The duration of the marriage;

"(iii)    The relative earning capacity of the parties;

"(iv)    The extent to which the marital estate has already benefited from the contribution;

"(v)    The tax consequences to each party; and

"(vi)    Any other factors the court deems just and equitable."

In this case, the trial court did not analyze the statutory criteria, because it determined that wife's contributions to the marriage were not sufficiently significant to meet the threshold requirement to trigger consideration of a compensatory spousal support award. For its part, the Court of Appeals did reach the question whether an award of compensatory spousal support would be "just and equitable in all of the circumstances." We note, however, that the Court of Appeals' rather truncated analysis and application of the statutory criteria in this case appears to have placed substantial emphasis on the absolute dollar amounts included in the marital estate, which led that court to conclude, erroneously in our view, that no award of compensatory spousal support should be made. Because we conclude that the Court of Appeals erred in analyzing and applying the statutory criteria for an award of compensatory spousal support, we set out what we consider to be the proper application of the statutory criteria to the facts presented here.

A.    *Amount, duration, and nature of contribution*

■    The first factor to address under the statute includes the "amount, duration and nature of the contribution" of the contributing spouse. To a substantial degree, those factors mirror the kind of considerations that must be addressed in making the initial determination whether the contributions of the spouse are significant enough to warrant any award of compensatory spousal support. As noted above, wife worked full time from the beginning of the marriage in March 1990 through husband's graduation from dental school in 1996. During that period of time, wife was the primary financial provider for the family. Beginning in 1993, when their first child was born, through February 2006, when they separated, wife provided primary childcare and household

responsibilities for husband and the family. Wife also worked part time in husband's dental practice from 1999 through their divorce in 2006.

Husband contends, however, that wife's contributions are not sufficient in amount, duration, and nature, because husband's success derived from his father's largess and husband's own unique personal skill in dentistry. Although husband was allowed to buy into his father's already successful dental practice on favorable terms and some of husband's earning capacity in his dental practice depends on his personal skill level, those circumstances do not negate wife's entitlement to some award of compensatory spousal support.

First, as we already have discussed, the 1999 amendments to the spousal support statutes broadened the statutory provisions such that contributions of one spouse do not need to contribute directly to the higher earning capacity of the other spouse, as long as they contribute to the education, training, vocational skills, career, *or* earning capacity of the spouse. Consequently, contributions to the education and training of a spouse can suffice. In this case, there is no question but that wife's full-time work while husband attained his undergraduate degree and his dental degree contributed significantly to husband's education and training.

Furthermore, in our view, husband's argument ignores wife's support of husband during the period when he obtained his dental degree, which allowed him to enter into what became a successful career. Without his dental degree, husband would not have been able to join his father's dental practice and would not have been able to put his personal dentistry skills to work. Wife was instrumental in husband's ability to obtain the dental degree that was the gateway to his dental career. Consequently, we conclude that wife's contributions are sufficient in amount, duration, and nature to weigh in favor of an award of compensatory spousal support.

B.  *Duration of marriage*

Neither party presents us with any argument based solely on the second statutory factor—duration of the marriage. Although there may well be some circumstances where

the duration of the marriage viewed in isolation is pivotal, we do not perceive that this is such a case. Consequently, we do not attempt to further analyze this factor in isolation, beyond noting that the parties were married for approximately 16 years. *See, e.g., Garza and Garza,* 201 Or App 318, 328, 118 P3d 824 (2005) (in analyzing how criteria set out in ORS 107.105(1)(d)(B) apply, Court of Appeals noted only duration of marriage without providing further elucidation).

Wife, however, contends that the "duration of the marriage" and the "extent to which the marital estate has already benefited from the contribution" are "two rather interrelated factors that go to the basic purpose of compensatory support—to compensate a spouse for contributions to another's education, training, *etc.*, when the marriage is dissolved before the benefits of such labors are fully realized." As a general matter, we agree with that basic description of the interplay of these two statutory provisions, and we address that interplay more fully below.

C.  *Relative earning capacity of the parties*

The third statutory factor addresses the earning capacities of the parties to the marriage. Here, the relative earning capacities of husband and wife contrast sharply. Husband averaged more than $350,000 per year in income from his dental practice from 2002 until the initiation of the marital dissolution in 2006. Husband also received rental income in each of those years averaging $23,000. Nothing in the record suggests that husband's income will be reduced substantially in the future. In contrast, wife's testimony established that her earning capacity is approximately $30,000 to $40,000 per year, based on her current training and prior job experience. The contrast between the relative earning capacities of husband and wife also weighs in favor of an award of compensatory spousal support.

Husband, in fact, does not suggest that this statutory factor does not support an award of compensatory spousal support. Rather, husband focuses his argument on the degree to which the marital estate has already benefited from husband's income during the years of the marriage and asserts that an award of compensatory spousal support would not be "just and equitable." We note, however, that the

spousal support statutes establish a particular connection between compensatory spousal support and the earning capacity of the spouse paying such support. ORS 107.135(3) applies to proceedings to reconsider spousal support awards. ORS 107.135(3)(a) provides:

> "In a proceeding under this section to reconsider the spousal or child support provisions of the judgment, the following provisions apply:

> "(a)   A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support, *except that an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse.*"

(Emphasis added.) In light of the legislatively recognized relationship between earning capacity and compensatory spousal support, we conclude that the substantial contrast in earning capacities of husband and wife also weighs in favor of an award of compensatory spousal support.

### D.   *Extent to which the marital estate has already benefited*

The fourth factor set out in ORS 107.105(1)(d)(B)(iv) is a legislative directive to consider the extent to which the marital estate has already benefited from the contribution made by the spouse seeking an award of compensatory spousal support. Not surprisingly, the parties view this requirement from different perspectives.

Husband takes a pragmatic approach, emphasizing the value of the assets amassed during the marriage. Husband argues that wife should not be awarded any compensatory spousal support, because the marital estate being shared already contains substantial assets generated from husband's income. Husband points out that the marital estate includes the value of husband's dental practice (valued at $671,000), that wife received more than $720,000 in assets when the marital estate was divided, and that wife also received the benefits of the lifestyle that the parties enjoyed during the period of their marriage after husband began his

dental practice. The Court of Appeals agreed with husband, noting that wife's contributions were "offset by the accumulation of nearly $1.5 million in marital assets and by the lifestyle that the parties enjoyed during the 10 years preceding their divorce." *Harris*, 230 Or App at 685.

Wife takes a more comparative approach, contending that the extent to which the marital estate already has benefited should be evaluated in terms of what the overall marital estate would be were the marriage to continue through the greatest asset generating period. Wife contends that the statute requires consideration of both the "duration of the marriage" and "the extent to which the marital estate has already benefitted from the contribution," and wife argues that those two interrelated factors go to the basic purpose of compensatory support, which she describes as "to compensate a spouse for contributions to another's education, training, *etc.*[,] when the marriage is dissolved before the benefits of such labors are fully realized." Wife asserts:

> "If one looks particularly at the value of enhanced earning capacity, it is greatest immediately after it is achieved, and then progressively diminishes until it is exhausted at retirement. The 'extent to which the marital estate has benefitted' must not focus solely on absolute dollars, but on where the parties are on this diminishing continuum at the time of divorce or separation. In this case the parties accumulated substantial assets, principally from 2002 onward. However, these few years are a small fraction of Husband's remaining work life of 27 years if he works until 65, of 17 if he retires at 55."

We agree with wife in the following respects. The fact that a contributing spouse receives significant assets in the disposition of a marital estate should not preclude an award of compensatory spousal support in all circumstances. And in determining the extent to which the marital estate already has benefited, it is appropriate to consider the duration of the marriage in relation to the time period that the marriage partners would reasonably expect to realize the benefits of the marriage.

The statute requires consideration of the extent to which the marital estate has *already benefited from the contribution.* The statute does not call for an evaluation of the

extent to which the marital estate *has* benefited from the contribution, but rather calls for an evaluation of the extent the marital estate has *already* benefited from the contribution. The addition of the temporal term "already" connotes that the extent of benefits already accrued should be compared to the extent of benefits that will be accrued. We understand the provision to mean that the relevant inquiry is how much the marital estate has already realized the benefits of the spouse's contributions compared to how much the marital estate would ultimately realize as the benefits of those contributions.

We do not agree with wife, however, to the extent that she appears to contend that the appropriate benchmark for compensatory spousal support is to provide the contributing spouse with an award that fully realizes all the benefits that would be obtained were the marriage not dissolving. Although it may be an overstatement to categorize the parties' positions in absolute terms, we view husband's position to be something akin to asserting that, if the parties have accumulated substantial assets and enjoyed a luxurious lifestyle during the marriage, then no compensatory support should be granted. And we understand wife's position to be that the contributing spouse should be awarded compensatory spousal support in an amount that will fully realize all the benefits that the spouse would have obtained had the marriage lasted throughout the other spouse's entire earning career. In our view, the correct answer lies somewhere in between.

In this case, during the period after husband began his dental practice until the marriage dissolved, the parties' lifestyle included a large home, luxury cars, expensive vacations, and a country club membership. In addition, wife received a substantial amount in the distribution of marital assets—*viz.*, assets valued at approximately $720,000. The Court of Appeals concluded that wife's share of the marital assets and her participation in the lifestyle that the parties enjoyed during the 10 years preceding their dissolution offset the contributions wife made to husband's education, training, and career. Although the amount of the marital assets that wife received is significant, that focus is too limited. As

wife notes, if she and husband had married after he completed his dental degree (and consequently she had not made the contributions she did to help him through the years it took for him to obtain his dental degree), wife would almost certainly have received the same distribution of marital assets as she received here. We agree. Viewed in that manner and in light of husband's remaining 17- to 27-year highly productive earning career, we conclude that the significant asset distribution and comfortable lifestyle available to wife for the 10 years preceding the divorce does not offset completely the contributions wife made to husband's education, career, and enhanced earning capacity. Accordingly, in this case, the significant asset distribution and financially comfortable lifestyle available to her do not disqualify wife from an award of compensatory spousal support.[6]

E.   *Tax consequences to each party*

ORS 107.105(1)(d)(B)(v) provides that the court should consider the tax consequence to each party in awarding compensatory spousal support. The parties, however, focus little of their attention on that statutory factor, and neither the trial court nor the Court of Appeals addressed it in their respective decisions.

Wife contends that husband will continue to realize substantially more income per month, even with a spousal support obligation of $12,000 per month, due to the disparate incomes of the parties, the marginal tax rates that would apply to an award of spousal support to wife, and the tax deductibility of such an award to husband. Wife also notes in passing that the "actual cost" of the $3,000 per month compensatory spousal support award she seeks "will be only $1,740" due to husband's incremental tax rate. Wife does not elaborate on those points other than to suggest that they support a determination that an award of compensatory spousal support to wife would be just and equitable in light of all the circumstances. We do not find anything in the record related to the tax consequences to the parties in this case helpful or

---

[6] We also observe that, during that period of time, wife had primary childcare and household responsibilities and wife engaged in part-time work in husband's business operations.

significant to determine whether an award of compensatory spousal support is appropriate.

F.  *Any other factors court deems just and equitable*

Under ORS 107.105(1)(d)(B)(vi), the court may address any other factors that the court deems just and equitable. As we have discussed previously, the directive to consider the just and equitable nature of a compensatory spousal support award is actually expressed three-fold in the spousal support statutes.

The terms "just and equitable" permit the court to exercise its equitable power in determining a proper award of spousal support, including compensatory spousal support, in light of all the circumstances. The overall statutory framework, however, provides some over-arching principles that bear on the court's exercise of its equitable power.

As discussed above, spousal support is divided into three categories of support: transitional spousal support, spousal maintenance, and compensatory spousal support. Those categories of spousal support are interrelated, and they also are cabined by the statutory directive to set the total spousal support award at "an amount of money for a period of time as may be just and equitable for one party to contribute to the other." ORS 107.105(1)(d). Consequently, we conclude that the amounts of spousal support awarded under each of the spousal support categories are relevant considerations in determining the overall just and equitable amount of spousal support to award.

As we explained above, however, each of the three categories of spousal support serves a different function. Transitional spousal support provides the temporary support needed for a spouse to obtain the training and education necessary for reentry into the job market. ORS 107.105(1)(d)(A). Spousal maintenance provides the financial support needed by a spouse for a specified or indefinite period, depending in part upon the financial needs and resources of each spouse. ORS 107.105(1)(d)(C). Compensatory support provides compensation to a spouse who has made a significant contribution, financial or otherwise, to the education, training, or career of the other spouse. ORS 107.105(1)(d)(B). Thus, the

amount of support awarded under each category of spousal support is relevant and should be considered in determining the overall amount of spousal support that is just and equitable. Because each category of spousal support serves a different function, however, an award of spousal support under one or more of the categories should not generally serve to negate entirely an award of support under the other categories. In other words, an award of transitional support, even a large award of transitional support, may not preclude an award of compensatory support where the statutory factors for determining an award of compensatory support are satisfied. Although a large transitional support award is relevant and may well serve to reduce the compensatory support award to some extent, only rarely will an award of spousal support under one or more of the statutory categories serve to eliminate completely an award of spousal support under the other category or categories when the applicable statutory criteria are otherwise met.

Wife sought in the trial court and argues in this court for a compensatory support award in the amount of $3,000 per month for 17 years of husband's remaining dental career. In determining the amount and the length of a compensatory spousal support award, we take into account the awards that wife has received as transitional support and as maintenance support,[7] the comfortable lifestyle that the marital assets provided to wife during the marriage, and the substantial distribution of marital assets to wife. We have also considered the six years that wife contributed significantly to husband's ability to obtain his dental degree, that wife assumed primary childcare and household responsibilities when she left work, that wife frequently worked at husband's business for approximately seven years, and husband's ability to produce income from his dental practice of $350,000 to $400,000 per year over the next 17 to 27 years. Based on the foregoing, we conclude that a compensatory spousal support award of $2,000 per month for 10 years is just and equitable in all of the circumstances. Consequently, the decision of the Court of

---

[7] In this case, the trial court awarded wife transitional support and maintenance support totaling $7,000 per month for four years, $4,000 per month for two years, $2,500 per month for two years, and $1,000 per month for one year.

Appeals and the judgment of the circuit court must be modified to award compensatory spousal support to wife in that amount.[8]

The decision of the Court of Appeals is modified in part and, as modified, affirmed. The judgment of the circuit court is modified in part and, as modified, affirmed, and the case is remanded to the circuit court for further proceedings.

---

[8] In a related case, S058224, wife has petitioned this court for review of the Court of Appeals' award of attorney fees to husband. By separate order issued today in case number S058224, the court has allowed wife's petition for review, vacated the Court of Appeals' award of attorney fees to husband, and remanded the award of attorney fees to the Court of Appeals for reconsideration in light of this decision.